UNITED STATES of America, Appellee,

v.

Ramon SANCHEZ, Defendant-Appellant.

No. 293, Docket 85–1141.

United States Court of Appeals,
Second Circuit.

Argued October 23, 1985.

Decided May 12, 1986.

Phylis Skloot Bamberger, Legal Aid Society, Federal Defender Services Unit, New York City, for defendant-appellant.

Elliott B. Jacobson, Asst. U.S. Atty., New York City (Rudolph W. Giuliani, U.S. Atty., S.D. of N.Y., Kenneth Roth, Asst. U.S. Atty., New York City, of counsel), for appellee.

Before PIERCE, WINTER, and MINER, Circuit Judges.

PIERCE, Circuit Judge:

This is an appeal from a judgment of the United States District Court for the Southern District of New York, Robert L. Carter, Judge, entered as to Ramon Sanchez on April 16, 1985, after a jury trial *in absentia* on November 8, 1984, convicting him and a co-defendant of conspiring to distribute and to possess with intent to distribute cocaine in violation of 21 U.S.C. § 846, and of possessing with intent to distribute and distributing cocaine in violation of 21 U.S.C. §§ 812, 841(a)(1) and 841(b)(1)(A) and 18 U.S.C. § 2.

Appellant argues principally that it was error for the district court to proceed with the trial in his absence; that the district court's instructions relating to his absence from trial were prejudicial; and that his trial lawyer's failure to make opening or closing statements or objections to the admission of evidence or to cross-examine witnesses violated his constitutional right to effective assistance of counsel.

We hold that the district judge did not abuse his discretion in ordering the trial *in absentia;* that it was harmless error to give a "flight" instruction under the circumstances; and that the defendant was not denied effective assistance of counsel under the Sixth Amendment. We affirm.

## BACKGROUND

Ramon Sanchez was arrested by New York City police officers on August 21, 1984, following a drug transaction that he allegedly facilitated between an undercover agent and Sanchez's co-defendant, Fidel

Garcia. The defendants were indicted on September 4, 1984. On September 13, Lawrence Gross, Esq., was assigned as counsel for Sanchez, and Joseph Stone, Esq., as counsel for Garcia.

The district court's findings make clear that, on September 25, 1984, at the only pretrial conference before the district judge, Garcia was absent, but his attorney, Stone, was present. Sanchez's lawyer, Gross, was not present at the first call of the calendar but was present at the second call. Sanchez had been taken from his cellblock to the courtroom that morning, and was present when his case was called and the trial date set for November 7, 1984.[1] The record does not indicate where Sanchez was located in the courtroom, or that an interpreter was present, or that there was any communication with or acknowledgment of Sanchez by the district judge. Mr. Gross protested that he had met with his client only once, had not yet examined the indictment, and had not yet determined how he would proceed. The district judge directed that any motions be filed by October 12, 1984. None were filed. On October 15, 1984, Sanchez was released on $1,000.00 bail. The record indicates that on October 16, 1984 Sanchez was rearrested on a separate federal narcotics charge. Having failed to appear in that case, he was ultimately arrested on a bench warrant on February 2, 1985, following which he pleaded guilty to an information and was sentenced.[2]

In the instant case, on the scheduled trial date, November 7, 1984, co-defendant Garcia and the two defense lawyers were present, but Sanchez was not. The case was called at approximately 10 a.m. The prosecutor stated that Sanchez had been rearrested on October 16, 1984, for "engaging in similar conduct"; this led to the issuance of a bench warrant, signed that day by Judge Keenan, for Sanchez. Then, a jury was selected, following which there was some discussion about proceeding with a trial of Sanchez in absentia; a Spanish interpreter was sworn; and at approximately 11 a.m. the case was continued until the following day, November 8, at 10 a.m.

On November 8, over objection of Sanchez's lawyer, the district judge granted the government's application for Sanchez to be tried in absentia. The trial began that day at approximately 10 a.m. and ended at 12:35 p.m. Sanchez's lawyer chose to remain silent throughout the trial, except that he joined in Mr. Stone's motion for judgment of acquittal, and he made two objections to the court's instruction to the jury regarding Sanchez's absence. At 3:35 p.m., the jury returned a verdict of guilty on each of the two counts against Sanchez.

## DISCUSSION

### 1. Trial in Absentia.

It has long been settled that a defendant charged with a crime may knowingly and voluntarily waive his constitutional right to be present at his trial. See, e.g., Diaz v. United States, 223 U.S. 442, 456–58, 32 S.Ct. 250, 254–55, 56 L.Ed. 500 (1912); United States v. Tortora, 464 F.2d 1202,

---

1. Defense counsel Gross conceded on November 8 that "it may be true that Mr. Sanchez was present on … September 25th." The district judge found that Sanchez was indeed present, apparently on the basis of that concession and: (1) the judge's indication that his law clerk recalled that Sanchez had been present; (2) the Assistant U.S. Attorney's argument that Sanchez was present, and that reference in the transcript to Garcia's and Gross' absences but not Sanchez' supported this contention; (3) the U.S. Marshal's daily log, indicating that on September 25 Sanchez was taken from his cellblock to Courtroom 518 "before your honor" and then returned to his cellblock; and (4) the Assistant U.S. Attorney's testimony, over Mr. Gross' objection as to hearsay, that U.S. Deputy Marshal Brown had explained to him that since the case had been held for a second call, Sanchez must have been kept in the courtroom until his case had been heard. We find this quite sufficient to justify the court's finding of this fact.

2. On March 1, 1985, Sanchez pleaded guilty to Information S 84 Cr. 623, charging him with a new, single count of possessing cocaine with intent to distribute in violation of 21 U.S.C. §§ 812, 841(a)(1), and 841(b)(1)(B). On April 16, 1985, the district judge imposed sentences pursuant to that plea and to the verdict herein which was returned in absentia; both sentences were to run concurrently.

1208–09 (2d Cir.1972), *cert. denied, sub nom. Santoro v. United States,* 409 U.S. 1063, 93 S.Ct. 554, 34 L.Ed.2d 516 (1972). "It must clearly appear in the record ... that the defendant was advised when proceedings were to commence and that he voluntarily, knowingly, and without justification failed to be present at the designated time and place before the trial may proceed in his absence." *Tortora,* 464 F.2d at 1209 (citing cases). This clear rule is fundamental to a defendant's right to be present at all critical stages of his criminal trial, *see* Fed.R.Crim.P. 43, and to his constitutional right to due process. *Tortora,* 464 F.2d at 1209.

It is not really disputed that Sanchez was present in the courtroom on September 25, 1984, or that his lawyer was also present, when the district judge set the trial date at November 7, 1984.[3] Appellant's counsel, who was not trial counsel, argues that the trial record is devoid of any clear showing that Sanchez heard and understood the district judge's setting of the trial date. Specifically, counsel contends that (1) there is no reference to the judge's communicating with or addressing or otherwise acknowledging the presence of Sanchez; (2) there is no reference to where Sanchez was situated in the courtroom; and (3) no interpreter was present, although one was sworn for the trial itself, and later Sanchez actually availed himself of the assistance of an interpreter at sentencing.

■ We find appellant's contentions unavailing. Although some district judges, out of an abundance of caution, communicate the trial date directly to the defendant himself, such prudence is not mandated by any law and may not even constitute prevailing practice. Indeed, trial dates are often rescheduled by consultation between judge and counsel even in the absence of the defendant altogether. Where, as here, the defendant and his attorney are present in the courtroom, absent extraordinary circumstances, the defendant may be deemed to have been advised of a trial date once it is communicated by the judge to his lawyer. We cannot say that the district judge's finding that Sanchez was aware of the setting of his trial date was clearly erroneous. *Cf. United States v. Pastor,* 557 F.2d 930, 934 (2d Cir.1977) (applying clearly erroneous standard to factual findings concerning defendant's absence from trial).

In light of the foregoing, we need not linger over where in the courtroom Sanchez was sitting. As to the lack of an interpreter at the September 25 proceeding, when the trial date was set, there is no indication that Sanchez or his attorney requested an interpreter. Further, we note that nowhere in the record or in appellant's brief does Sanchez expressly state that his knowledge of English is insufficient for him to have understood the proceedings and the setting of his trial date. On the contrary, Sanchez's trial counsel stated that Sanchez did understand some English. In any event, Gross' sole purpose in being present was to represent Sanchez and, in the absence of extraordinary circumstances, we deem rulings communicated to the attorney, including setting of the trial date, to constitute communications made to his client.

■ Once advised of the trial date, Sanchez failed to present himself at the November 7 and 8 proceedings, and "no justification, either to the district court or on appeal, has been offered for his absence." *See Tortora,* 464 F.2d at 1209–10; *see also Cureton v. United States,* 396 F.2d 671, 676 (D.C.Cir.1968); *United States v. Lochan,* 674 F.2d 960, 967 (1st Cir.1982). A defendant may not *unilaterally* set the time or circumstances of his trial, *see United States v. Bentvena,* 319 F.2d 916 (2d Cir.), *cert. denied, sub nom. Ormento v. United States,* 375 U.S. 940, 84 S.Ct. 345, 11 L.Ed.2d 271 (1963); rather, the defendant bears the burden of justifying his absence from a known proceeding against him. *See Tortora,* 464 F.2d at 1209. Further, although a defendant may choose to waive his right to be present at his trial

---

**3.** See footnote 1, *supra.*
■

and may reveal his intent to do so by his conduct (e.g. by declining to leave his cell to attend trial or by refusing to desist from disruptive conduct during trial), he must in some way make known to the court his intention to exercise this right. *See Illinois v. Allen,* 397 U.S. 337, 90 S.Ct. 1057, 25 L.Ed.2d 353 (1970). In the present case, Sanchez's trial counsel acknowledged that "there is no evidence of where [Sanchez] is." This acknowledgment adequately supports the district judge's conclusion that Sanchez "willfully absented himself without a reason." In fact, to this date we are unaware of Sanchez' whereabouts when this case proceeded to trial.

We turn, then, to the question of whether, having properly found that Sanchez had waived his right to attend trial, the district judge abused his discretion in ordering a trial *in absentia. See Pastor,* 557 F.2d at 934 (applying abuse of discretion standard to decision on holding trial *in absentia*). In *Tortora,* 464 F.2d at 1210, we set forth the pertinent factors:

> Whether the trial will proceed will depend upon the trial judge's determination of a complex of issues. He must weigh the likelihood that the trial could soon take place with the defendant present; the difficulty in rescheduling, particularly in multiple-defendant trials; the burden on the Government in having to undertake two trials, again particularly in multi-defendant trials where the evidence against the defendants is often overlapping and more than one trial might keep the Government's witness in substantial jeopardy.

*See also United States v. Reed,* 639 F.2d 896, 903–04 (2d Cir.1981); *Pastor,* 557 F.2d at 934–39.

■ The "complex of issues" test outlined in *Tortora* confers broad discretion in the district judge in assessing whether to hold a trial *in absentia* where a defendant has been found to have waived his right to be present at trial. *Tortora,* noting the desirability that a defendant be present at his trial, held that even in such a case, the trial *in absentia* should be ordered "only when the public interest clearly outweighs that of the voluntarily absent defendant." *Tortora,* 464 F.2d at 1210. *Tortora* so held in a context in which the public interest in a trial *in absentia* clearly outweighed the interests of the defendant: numerous delays had occurred; attorneys for the various defendants had conflicting schedules; the Government's main witness had been threatened repeatedly by appellants and thus would have been exposed to considerable danger had the trial been postponed; and severance would have greatly burdened the Government. *Id.*

In the decade and a half since *Tortora,* however, the broad "complex of issues" test has been applied to uphold trials *in absentia* in other compelling, if less extraordinary, circumstances. For example, in *Pastor,* also a multi-defendant case, we held that the Sixth Amendment protection of a defendant's right to attend proceedings against him does not bar a trial *in absentia* of a voluntarily absent defendant "where the government has spent considerable time, energy and money in preparing for trial and assembling witnesses and a panel of veniremen in the expectation that trial will proceed as scheduled." *Pastor,* 557 F.2d at 934 (citing *United States v. Wilson,* 421 U.S. 309, 318, 95 S.Ct. 1802, 1807, 44 L.Ed.2d 186 (1975)). In *Wilson v. Harris,* 595 F.2d 101, 103–04 (2d Cir.1979) (per curiam) we held that the *Tortora* test was satisfied in a single-defendant case in which the defendant, while in custody, acted disruptively in one court proceeding, refused to attend a subsequent proceeding, and sought to dismiss his counsel in an apparent attempt to cause unnecessary delay. Thus, *Tortora* was satisfied in a single-defendant case wholly on the basis of the defendant's stonewalling and other misconduct. *Id.* at 164 (citing *Illinois v. Allen,* 397 U.S. 337, 346, 90 S.Ct. 1057, 1062, 25 L.Ed.2d 353 (1970)). *See also United States v. Schwartz,* 535 F.2d 160, 165 (2d Cir.1976), *cert. denied,* 430 U.S. 906, 97 S.Ct. 1175, 51 L.Ed.2d 581 (1977) (summarily finding no error in district court's commencing trial of both defendants after flight of one defendant) (citing *Tortora*).

Indeed, in some cases, it may be sufficient that there is no reasonable likelihood that the trial could soon proceed with the defendant present. *Cf. Pastor,* 557 F.2d at 934 (noting "the public's interest in seeing the accused brought to trial as well as the court's responsibility to do so speedily") (citing *Tortora*). This is especially true given the enactment of the Speedy Trial Act, 18 U.S.C. § 3161 *et seq.* (as amended 1984), which provides for relatively prompt trials, and given the current spate of multi-count indictments charging multiple defendants and requiring the commitment of literally weeks and months of trial time. In light of these circumstances, district judges must have broad discretion in determining whether to proceed with a trial *in absentia,* or to adjourn, or to sever.

■ In the present case, it is enough that, in a case with more than one defendant, Sanchez waived his right to be present by failing to appear without explanation and while on bail; that some reasonable steps, including a one-day continuation with notification to his attorney and the issuance of a bench warrant, were taken unsuccessfully in response to his non-appearance; that there was no reason to believe that the trial could likely soon be held with Sanchez present; and that severance would impose on the Government the burden of prosecuting two separate trials that would involve substantially the same evidence.

First, as noted above and as the district court found, Sanchez knew of and waived his right to attend his trial. Although the issuance of the bench warrant and the one-day continuance do not constitute the full inquiry as to a defendant's whereabouts that the Fifth Circuit might require, *see United States v. Benavides,* 596 F.2d 137, 139–40 (5th Cir.1979); *United States v. Beltran-Nunez,* 716 F.2d 287, 290 (5th Cir. 1983), the warrant and continuance in this case afforded Sanchez as much protection

as he deserved as a defendant out on bail pending his known trial date.

Second, on November 8, when the district judge ruled on the motion for a trial *in absentia* there was no reason to believe that the trial could soon take place since his absence was unexplained and the continuance for one day had brought no new information as to Sanchez's whereabouts. Sanchez' own counsel conceded that Sanchez' whereabouts were unknown. Indeed, the only information on record was that after Sanchez' release on bail on October 15, 1984, he was rearrested on a separate narcotics charge the following day. He apparently failed to appear in that case as well.

■ Finally, we cannot say that the district judge abused his discretion in basing his decision to try Sanchez *in absentia* in part on his concern for avoiding separate trials involving substantially the same evidence. Although the trial proved to be quite short, its brevity was not necessarily apparent at its inception. Our review of the district judge's exercise of discretion on this issue must be based on the relevant circumstances confronting the judge at the time of his ruling, without the benefit of hindsight. The indictment alleged both a substantive federal narcotics count and conspiracy. Further, either defendant might have raised, *inter alia,* an entrapment defense. Moreover, even assuming, *arguendo,* that the trial was obviously going to be brief, a severance and postponement as to Sanchez would have necessitated that the Government preserve records and other evidence and retain witnesses for a possible second trial sometime in the indefinite future. The alternative, even more problematic, would have been to postpone Garcia's trial as well, thereby burdening both the Government, which was ready to proceed on November 7 and 8, and Garcia, who had his own right to a speedy trial.[4] In short, we do not think that the district judge abused his discretion in light of *Tor-*

---

**4.** For Speedy Trial Act purposes, a defendant's speedy trial clock stops during a period of delay attributable to a co-defendant. *See United*

*States v. Piteo,* 726 F.2d 50, 52 (2d Cir.1983), *cert. denied,* 466 U.S. 905, 104 S.Ct. 1682, 80 L.Ed.2d 156 (1984).

*tora,* later cases, and relevant considerations posed by the Speedy Trial Act.

## 2. *Instructions to the Jury.*

Appellant contends that the district judge erred in charging that the jury could infer consciousness of guilt from Sanchez' "flight or nonappearance." The judge stated in pertinent part:

> Whether or not flight or nonappearance shows a consciousness of guilt and the significance, if any, that is to be attached to such circumstances, are matters for your determination. The flight or nonappearance of the defendant is a fact to be considered by you, together with all the other evidence, in determining the guilt or innocence of the defendant.

Appellant argues that this instruction violated Fed.R.Evid. 605 and constitutional due process under the Fourteenth Amendment.

■ We reject appellant's argument as to Rule 605, which prohibits a judge from testifying as a witness. Judge Carter's instructions as to Sanchez' nonappearance did not constitute purported or implied testimony by the judge as to Sanchez. Rather, the instructions reflected the judge's proper finding that Sanchez had been present on September 25 and had been informed of the trial date, and his judicial determination that the jury could infer consciousness of guilt from Sanchez' nonappearance.

■ However, in our view, this was an improper instruction. Although it is "universally conceded that the fact of an accused's flight ... [is] admissible as evidence of consciousness of guilt," 2 J. Wigmore, Evidence § 276, at 111 (3d ed. 1940), here there was no evidence at the time of the district judge's instruction that Sanchez had become a fugitive, i.e., that he had demonstrated an intention to flee from the court's jurisdiction. Therefore, it was error to instruct the jury that it could equate his nonappearance with "flight." The mere unexplained nonappearance of Sanchez at the proceedings on November 7 and 8—which is the only purported indication of flight herein—was not sufficient to warrant the district judge's flight instruction. A flight instruction may be made only on the basis of "an adequate factual predicate" suggesting the occurence of flight. *United States v. Grandmont,* 680 F.2d 867, 869 (1st Cir.1982) (citing *United States v. Ritch,* 583 F.2d 1179, 1181 (1st Cir.1978)). In *Grandmont,* there was evidence that, having been subpoenaed by a grand jury and accused of the crime charged, the defendant (1) told his accomplice that he would not appear before the grand jury and planned to leave New Hampshire after receiving new identification; (2) went to Canada; (3) avoided his home upon his return to New Hampshire; (4) went to North Carolina; and (5) went to California, where he sought to hide and to conceal his identity from arresting officers. *See also United States v. Ramon-Perez,* 703 F.2d 1231, 1232 (11th Cir.) (defendant, while on bail, turned over car to co-signer on purchase loan, quit job, and secretly left town), *cert. denied,* 464 U.S. 841, 104 S.Ct. 136, 78 L.Ed.2d 130 (1983). A flight instruction need not be limited to similarly complete predicate evidence. The nature of flight is such that often there will be evidence no more complete than that the defendant has not been seen by those to whom he is familiar, that he has left his customary residence, that those who have sought to find him have failed, and the like. Such evidence may often suffice, if, unlike here, it clearly appears on the record. The point is that any adequate evidentiary predicate must include *some* "[e]vidence surrounding [the] failure to appear [at trial]," *see United States v. Hernandez-Miranda,* 601 F.2d 1104, 1106 (9th Cir.1979), and must thereby provide the jury with more than an opportunity for mere "conjecture and speculation." *See United States v. Myers,* 550 F.2d 1036, 1050 (5th Cir.1977) (finding flight instruction erroneous as unsupported by record evidence of flight).

To hold that Sanchez' mere unexplained nonappearance for trial is an adequate evidentiary predicate warranting an instruction as to flight and inferences which may

be drawn therefrom effectively would impose a heavy sanction on what may constitute the mere waiver of a constitutional right to attend trial. We would not ordinarily permit an adverse instruction on the basis of a defendant's waiver of other constitutional rights, such as the right to call witnesses or to remain silent.

■ However, an improper flight instruction is not necessarily plain error. *See, e.g., Schwartz,* 535 F.2d at 165; *United States v. Vines,* 580 F.2d 850, 852–53 (5th Cir.), *cert. denied,* 439 U.S. 991, 99 S.Ct. 591, 58 L.Ed.2d 665 (1978); *United States v. Stevenson,* 424 F.2d 923 (D.C.Cir. 1970). In the present case, we consider the erroneous instruction to be harmless error, in light of the overwhelming weight of the evidence against Sanchez. Detective Massaria testified that he had asked Sanchez to sell him "perico," the Spanish word for cocaine, and that Sanchez returned with a substance and completed the hand-to-hand transaction. A government chemist performed five tests on the substance and determined conclusively that it contained cocaine. No issue was raised as to the identification of Sanchez. As to the conspiracy charge, the evidence of Sanchez' association with Garcia, whom the jury also found guilty, was similarly compelling. The evidence established that Detective Massaria met with both defendants on the corner of West 47th Street and Ninth Avenue in Manhattan; that he directed the request for cocaine to Sanchez, who instructed Garcia to obtain the cocaine; and that meanwhile Sanchez talked with Massaria before accepting payment from him. Given the record evidence, we consider the error harmless as to both the substantive and the conspiracy counts. *Chapman v. California,* 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967).

### 3. *Assistance of Counsel.*

A defendant, of course, may not claim ineffective assistance of counsel merely because in hindsight he thinks counsel's trial strategy was inadequate. The test is whether (1) the defendant had reasonably effective assistance when judged "under prevailing professional norms," *see Strickland v. Washington,* 466 U.S. 668, 688, 104 S.Ct. 2052, 2065, 80 L.Ed.2d 674 (1984), and (2) there is a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different," *Strickland,* 466 U.S. at 694, 104 S.Ct. at 2068.

■ We cannot say that either requirement is met here. In some cases, a strategy of silence on defense counsel's part may be quite appropriate. *See, e.g., Warner v. Ford,* 752 F.2d 622, 625 (11th Cir.1985). Here, there is no evidence that Sanchez made any effort to communicate with or otherwise cooperate with his attorney. There is no evidence that Sanchez consulted his attorney regarding his decision not to attend the trial, and not to be available during the weeks preceding trial. Where an attorney is confronted with such a client, whose uncooperativeness precludes any reasonable basis for an active defense, the strategy of silence—perhaps in hopes that the government will produce insufficient evidence or that the government or court will commit reversible error—may actually constitute a defense strategy. *Cf. Strickland,* 466 U.S. at 689, 104 S.Ct. at 2065 (affording defense counsel "wide latitude ... in making tactical decisions"). Certainly the right to counsel does not impose upon a defense attorney a duty unilaterally to investigate and find evidence, or to pursue a fishing expedition by cross-examination, or to present opening or closing remarks on the basis of no helpful information, or to object without purpose, on behalf of an uncooperative and unavailable client. Further, we note that defense attorney Gross in fact participated by objecting to the trial *in absentia* and to the flight instruction and by moving for a judgment of acquittal pursuant to Fed.R.Crim.P. 29.

■ Second, while we do not consider counsel's limited defense activity to have been inadequate as a defense strategy, even if it were, appellant has not demonstrated a "reasonable probability" that but for Gross' silence Sanchez would not have

been convicted. The direct testimony of an experienced undercover officer concerning a hand-to-hand narcotics transaction, coupled with the evidence of the government's chemical analysis of the sold cocaine, was simply overwhelming evidence of Sanchez' guilt. *See, e.g., United States v. Aulet,* 618 F.2d 182, 188–89 (2d Cir.1980).

Sanchez attempts to distinguish his case from cases following the *Strickland* two-part analysis by arguing that in effect he had no counsel at all. We find this argument unpersuasive. Certainly Sanchez may not by his absence effectively force his attorney into a strategy of silence and then complain that he was denied counsel or never waived his right to counsel. *Cf.* Uniform Rules of Criminal Procedure 713(b), comment (Approved Draft, 1974) (distinguishing between formal waiver and informal forfeiture in context of trial *in absentia*).

■ We recognize that there is at least a presumption of unreliability where "counsel entirely fails to subject the prosecution's case to meaningful adversarial testing...." *United States v. Cronic,* 466 U.S. 648, 659, 104 S.Ct. 2039, 2047, 80 L.Ed.2d 657 (1984) (discussing *Davis v. Alaska,* 415 U.S. 308, 94 S.Ct. 1105, 39 L.Ed.2d 347 (1974)). But the cases finding such a breakdown of the adversarial process involve either a court preventing counsel from pursuing a defense, *see, e.g., Davis,* 415 U.S. at 318, 94 S.Ct. at 1111, or total absence of counsel. *See Cronic,* 466 U.S. at 659 & n. 25, 104 S.Ct. at 2047 & n. 25 (citing cases). Apart from these rare instances, in which no showing of prejudice is required, the *Strickland* two-part test of ineffectiveness generally applies. *See id.* at 659 n. 26, 104 S.Ct. at 2047 n. 26.

Our holding today does not rule out the possibility that where there exists some reasonable basis for an active defense, defense counsel's silence may amount to a violation of a defendant's Sixth Amendment rights. *See, e.g., Martin v. Rose,* 744 F.2d 1245, 1250–51 (6th Cir.1984) (citing *Cronic* ). But where, as here, the defendant by his own obstructive conduct pre-

cludes his counsel from pursuing an intelligent active defense, the concerns of *Cronic* and *Rose* are not invoked, and the general test of effectiveness of counsel applies, as recognized in *Cronic.* Any other result would permit a defendant to forestall adjudication indefinitely by intentionally sabotaging his own defense. To reward such tactics would defy both the purposes of the Sixth Amendment and common sense.

Affirmed.