**UNITED STATES of America, Appellee,**

v.

**Michael J. CROSBY, Appellant.**

**No. 89–5450.**

United States Court of Appeals, Eighth Circuit.

Submitted May 18, 1990.

Decided Oct. 16, 1990.

Mark D. Nyvold, Minneapolis, Minn., for appellant.

James E. Lackner, Minneapolis, Minn., for appellee.

Before JOHN R. GIBSON and FAGG, Circuit Judges, and BRIGHT, Senior Circuit Judge.

JOHN R. GIBSON, Circuit Judge.

Michael J. Crosby did not appear in court on the date set for commencement of his criminal trial, was tried *in absentia*, and was convicted. The issues in this case revolve primarily around this somewhat un-

usual circumstance and whether Rule 43 of the Federal Rules of Criminal Procedure applies because Crosby was not present when the trial commenced. We hold that a defendant who does not appear for his criminal trial, including the commencement of it, waives the protections of Rule 43 and the rights incorporated in that rule. We affirm the conviction.

Crosby was charged, together with Martin Cheatham, James Sannes and Jack Cunningham, with numerous criminal offenses arising out of a fraudulent scheme in which customers paid for, but never received, silver commemorative medallions. The facts are set out in detail in *United States v. Cheatham*, 899 F.2d 747, 748–50 (8th Cir. 1990), and for the most part are immaterial to the issues presented in this case. It suffices to say that the case was set for trial on October 12, 1988. Crosby was present at a pretrial conference on August 15, 1988, when the court[1] advised counsel for all parties of the trial setting. On September 12, 1988, the clerk sent a notice to all counsel confirming the date. On September 30, 1988, Crosby was present at a pretrial conference and, again, the court notified the parties and attorneys of the October 12 trial date. At that time, Crosby's counsel informed the court that he had no objection to the October 12 trial setting. On October 7, the trial court heard various motions which Crosby made through his counsel, and again the trial setting of October 12 was referred to by court and counsel.

On October 12, 1988, Cheatham, Sannes and Cunningham and their counsel appeared, ready for trial. Crosby failed to appear. The district court ordered a warrant issued and executed. As the district court stated in its order entered on October 14, delaying trial until October 17, "all other counsel, all other parties, the judge, all court personnel, and 54 jurors were present and ready to commence trial." *United States v. Crosby*, No. 3–88 CR 40(1), slip op. at 2 (D.Minn. Oct. 14, 1988). The marshal's office informed the court and counsel

it was unable to locate Crosby at his residence. The order delaying trial stated: "[A] search of his residence by the Marshals would indicate that the residence has been abandoned by the defendant Crosby." *Id.* at 2–3. The district court ordered Crosby's bond of $100,000 forfeited and found that Crosby "deliberately, voluntarily, knowingly, and without justification failed to be present at the designated time and place for the trial of the action." *Id.* The court further found that no evidence was presented as to the defendant's whereabouts and there was no reasonable probability that he could be located shortly or the trial rescheduled with Crosby in attendance. *Id.* Observing that the government had listed eighty-three potential witnesses and more than four-hundred proposed exhibits for the trial, the district court found that rescheduling posed extreme difficulties and that undertaking two separate trials would place a substantial burden on the government and the court. The court found that Crosby "voluntarily waived his constitutional right to be present during the trial" of the action and "[t]he public interest in proceeding with the trial in the absence of ... Crosby outweigh[ed] the interest of the defendant Crosby to be present during the conduct of the trial...." *Id.* at 4.

The trial commenced October 17, and the jury rendered a verdict November 18, 1988, finding Crosby guilty on twenty-five counts of mail fraud. Crosby was arrested on June 14, 1989 and later sentenced to four consecutive five-year terms on twenty-two of the counts; the trial judge suspended imposition of sentence on the three remaining counts, and placed Crosby on five years probation to commence upon completion of the sentences on the other counts, conditioned upon payment of $550,000 restitution to the victims during the period of probation. Insofar as other facts are material to the issues raised, they will be set forth with respect to each of the arguments.

---

**1.** The Honorable Donald D. Alsop, Chief Judge, United States District Court for the District of Minnesota.

### I.

■ Crosby argues that Rule 43 of the Federal Rules of Criminal Procedure plainly requires his presence at the commencement of trial as a prerequisite to continuing the trial in his absence.[2] He argues that Rule 43 incorporates preexisting law as set forth in *Diaz v. United States*, 223 U.S. 442, 32 S.Ct. 250, 56 L.Ed. 500 (1912). In *Diaz*, a criminal defendant voluntarily absented himself from his own trial on two separate occasions, but nonetheless consented that the trial should proceed without him. *Id.* at 445. Diaz appealed his conviction on the ground that his absences from trial prevented him from exercising his constitutional right to confront all witnesses who testified against him. The Supreme Court rejected Diaz's claim, relying on the prevailing rule that:

> [W]here the offense is not capital and the accused is not in custody, ... if, after the trial has begun in his presence, [the defendant] voluntarily absents himself, this does not nullify what has been done or prevent the completion of the trial, but, on the contrary, operates as a waiver of his right to be present and leaves the court free to proceed with the trial in like manner and with like effect as if he were present.

*Id.* at 455, 32 S.Ct. at 254 (citations omitted). *Diaz* dealt only with the situation where a trial had commenced and the defendant thereafter voluntarily absented himself.

In essence, Crosby's argument is based upon the plain language of Rule 43. Crosby interprets paragraph (b) of Rule 43 to say that before a court can try a criminal defendant *in absentia*, the defendant must have at least been present at the outset of the trial. Crosby recognizes that a number of other circuits have held contrary to his

position, but criticizes the reasoning in those decisions and particularly their treatment of *Diaz*. He also points to the extreme prejudice resulting from his absence at trial. On the strength of these two points, Crosby asks us to set aside the district court decision and remand this case for a new trial.

This circuit has not yet dealt with the application of Rule 43 where a criminal defendant such as Crosby is tried and convicted *in absentia*. Other circuits facing the issue have allowed convictions to stand on a theory of waiver. We are persuaded that we should do likewise.

The notes of the advisory committee on rules make clear that the first sentence of Rule 43 is a restatement of existing law. Fed.R.Crim.P. 43, notes of advisory committee on rules (note 1). We are satisfied that the language of Rule 43 does no more than restate the holding in *Diaz*. The reasoning in *Diaz* applies equally to the factual circumstances in this case where the defendant fails to appear for commencement of trial, as it does in the situation where the defendant appears at the commencement and then absconds. In both cases, the defendant waives his Rule 43 right to be present during trial when he voluntarily absents himself from the courtroom.

In discussing this issue in *Government of the Virgin Islands v. Brown*, 507 F.2d 186, 189 (3d Cir.1975), Judge Rosenn pointed out that Rule 43 was merely a paraphrase of the holding in *Diaz*. In *Brown*, the defendant was absent from court on the first morning of voir dire. He appeared in court that afternoon, made no explanation for his earlier absence, and observed the remaining voir dire examination without making any objection. Brown was present throughout the remainder of his

---

**2.** Rule 43 provides in relevant part:

(a) **Presence Required.** The defendant shall be present at the arraignment, at the time of the plea, at every stage of the trial including the impaneling of the jury and the return of the verdict, and at the imposition of sentence, except as otherwise provided by this rule.

(b) **Continued Presence Not Required.** The further progress of the trial to and including the return of the verdict shall not be prevented and the defendant shall be considered to have waived the right to be present whenever a defendant, *initially present,*

(1) is voluntarily absent after the trial has commenced (whether or not the defendant has been informed by the court of the obligation to remain during the trial).... (emphasis added).

trial. Following conviction, Brown appealed to the Third Circuit, arguing that conducting the voir dire proceedings of the first morning in his absence violated his constitutional and statutory rights. The Third Circuit rejected his claim, holding that "Brown's willful absence from the voir dire examination ... was knowing and voluntary, and that this voluntary absence was a waiver of both his constitutional and statutory right to be present at the commencement of his trial." *Id.* at 189.

We agree with Judge Rosenn that there are no talismanic properties "which differentiate the commencement of a trial from later stages." *Id.* In fact, the voir dire examination is probably not as critical as cross-examination of the key witnesses, which occurs in the later phases of a trial. It would be anomalous to attach more significance to a defendant's absence at commencement than to absence during more important substantive portions of the trial. *Id.* Judge Rosenn did note that the commencement of trial would take on special significance under the rule if the defendant did not know when the trial was to begin, since in that case he could not be said to have knowingly waived his right to be present. *Id.* In *Brown,* however, one of the conditions for the defendant's release on bail was that the defendant appear at the start of the trial. Thus, it was clear that the *Brown* defendant knew his trial date.

The facts in Crosby's case are identical in many respects to those in *Brown.* Both defendants were released from custody on bail before their trial. Both voluntarily failed to attend the beginning of trial and neither offered any explanation for his absence. Crosby knew beyond question that his trial would start on October 12. In Crosby's case, as in *Brown,* the district court painstakingly outlined the times when Crosby received and acknowledged notice of that date.

Our decision to follow *Brown* is bolstered by the fact that other circuits have treated this issue in similar fashion. In *United States v. Peterson,* 524 F.2d 167 (4th Cir.1975), *cert. denied,* 423 U.S. 1088,

96 S.Ct. 881, 47 L.Ed.2d 99 (1976), the Fourth Circuit also concluded that a defendant's voluntary absence at the commencement of trial was a waiver under Rule 43 just as if the defendant had attended the beginning of a trial and then later absconded. The court reasoned that:

> [t]o permit a defendant, free on bail, to obstruct the course of justice by absconding without a compelling reason, after having received actual notice of the time and place of trial, is as inconsistent with the purposes of the rule as to permit a defendant to abscond after the trial has commenced. We therefore hold that a defendant may waive his right to be present at the commencement of his trial just as effectively as he can waive his right to be present at later stages of the proceedings.

*Id.* at 184.

The Second Circuit in *United States v. Tortora,* 464 F.2d 1202, 1208 (2d Cir.), *cert. denied, Santoro v. United States,* 409 U.S. 1063, 93 S.Ct. 554, 34 L.Ed.2d 516 (1972), reached a similar conclusion, stating:

> Waiver of a constitutional right must be both "knowing" and "voluntary." A defendant who deliberately fails to appear in court does so voluntarily, and thus the important question is whether his absence can be considered a "knowing" waiver. We hold that it can. The deliberate absence of a defendant who knows that he stands accused in a criminal case and that the trial will begin on a day certain indicates nothing less than an intention to obstruct the orderly processes of justice. No defendant has a unilateral right to set the time or circumstances under which he will be tried.

The *Tortora* Court did not hold that the district court should proceed *in absentia* in every case in which the defendant voluntarily absented himself, but that the decision of whether to proceed is "within the discretion of the trial judge, to be exercised only when the public interest outweighs that of the voluntarily absent defendant." *Id.* at 1210.

In *United States v. Sanchez,* 790 F.2d 245 (2d Cir.), *cert. denied,* 479 U.S. 989, 107

S.Ct. 584, 93 L.Ed.2d 587 (1986), the Second Circuit gave further guidance on the parameters of the district court's discretion to try a defendant *in absentia.* The *Sanchez* court wrote:

[D]istrict judges must have broad discretion in determining whether to proceed with a trial *in absentia....*

In the present case, it is enough that, in a case with more than one defendant, Sanchez waived his right to be present by failing to appear without explanation and while on bail; that some reasonable steps, including a one-day continuation with notification to his attorney and the issuance of a bench warrant, were taken unsuccessfully in response to his non-appearance; that there was no reason to believe that the trial could likely soon be held with Sanchez present; and that severance would impose on the Government the burden of prosecuting two separate trials that would involve substantially the same evidence.

*Id.* at 251.

Read together, these cases provide the factors a district judge should consider when deciding whether to try a defendant *in absentia.* They include: the likelihood that the trial can take place with the defendant present, the difficulty of rescheduling, and the burden on the government and inconvenience to jurors of having to undertake two trials, particularly in a multiple defendant case. The district court carefully considered each of these factors before deciding to commence the trial without Crosby. It delayed the trial five days, trying to obtain Crosby's presence, before finally concluding that it would be unable to secure Crosby. Rescheduling of this case would have greatly disrupted the court's schedule and imposed a burden on the witnesses by requiring many of them to appear a second time.[3] Some of the witnesses were elderly with attendant problems of memory loss and the possibility that they might die before the trial could be rescheduled. In light of these conditions, holding two separate trials, one for three defen-

dants and the other if and when Crosby was found, presented the court and jurors with significant inconvenience. Following the analysis suggested by the Second and Fourth Circuits, we have no difficulty satisfying ourselves that Crosby waived his right to be present at trial and that the district court acted within its discretion in trying Crosby *in absentia* together with the other three defendants who appeared at trial.

## II.

■ Crosby also contends that the district court erred in failing to remove court-appointed counsel Douglas Altman as Crosby requested in a motion on Friday, October 7, just five days before the scheduled start of trial. We are satisfied that Judge Alsop did not abuse his discretion in denying this last-minute request to remove.

Crosby had attempted to discharge Altman in a motion twenty-nine days earlier, citing at that time a long list of issues on which Crosby and his counsel did not agree. At the previous hearing Altman also asked for permission to withdraw from the case. Magistrate Janis Symchych denied both requests, pointing out that Crosby was not entitled to select the individual attorney who would represent him when he was served by court-appointed counsel. *United States v. Crosby,* No. CR 3–88–40, slip op. at 1 (D.Minn. Sept. 23, 1988). Just as Crosby could not select his appointed counsel, he was also not at liberty to discharge that attorney. *Id.* Magistrate Symchych also concluded that the issues Crosby listed did not raise concern about ineffective assistance of counsel and that Altman could be prepared for trial by October 12. *Id.* at 1–2.

Shortly before trial, in a hearing before Judge Alsop, Crosby renewed his earlier motion to remove Altman. At that time, Altman again moved for permission to withdraw from the case. Judge Alsop heard the motions *in camera* and also denied both requests.

---

**3.** The government had subpoenaed eighty-three witnesses, including witnesses from Virginia, rural Alabama, Wyoming, Iowa, Nebraska, North Dakota, Texas, New York, and Canada.

In *United States v. Hart*, 557 F.2d 162, 163 (8th Cir.), *cert. denied*, 434 U.S. 906, 98 S.Ct. 305, 54 L.Ed.2d 193 (1977), we held that a district court has broad discretion when determining whether substitution of counsel is warranted. "The trial court, when confronted by such an allegation, has an obligation to inquire thoroughly into the factual basis of the defendant's dissatisfaction." *Id.* But, "[t]he right to effective assistance of counsel may not be improperly manipulated by an eleventh hour request to obstruct the orderly administration of justice." *Id.*

It is evident that there were disagreements between Crosby and his counsel. In denying Crosby's second motion to remove, Judge Alsop made a thorough investigation of the conflicts between Crosby and Altman, and made every reasonable effort to resolve them. Most of the difficulty seemed to be over Crosby's concern for obtaining financial documents he believed were necessary to his defense. In particular, there were two areas of concern. First, Crosby claimed that his attorney failed to use court-appointed accounting services to prepare financial summaries of documents stored in Crosby's garage.[4] Second, Crosby believed that financial records stored in a warehouse in California were also critical to his defense. He complained that Altman would not help him arrange to retrieve these records.[5]

Judge Alsop made every effort to provide a remedy. He had already previously authorized funding for Crosby and his co-defendants to employ a professional accountant in preparation for trial. The judge extended the scope of that funding so that Crosby could have the same accounting firm provide whatever additional services Crosby needed with respect to the disorganized financial records. In addition, he arranged for Crosby, if necessary, to personally fly to California to retrieve whatever records were stored there.[6] We are persuaded, as was Judge Alsop, that these two solutions resolved all significant conflicts between Crosby and Altman.

Crosby makes clear that he raises no claim of ineffective assistance of counsel, reserving this for later presentation. The record reveals that Crosby's counsel called numerous witnesses from all parts of the United States and vigorously presented a defense for Crosby. Crosby's counsel spent two days and questioned eight witnesses as part of Crosby's defense. The witnesses were from California, Canada, South Dakota, Texas and Virginia. The defense denied all allegations of fraud and attempted to show that Crosby was merely a poor administrator legitimately trying to establish a non-profit business. The accounting testimony, Crosby's primary bone of contention with respect to the removal of Altman as counsel, was not presented by any of the defendants' counsel. The government's case contains strong evidence against Crosby, including the fact that he received the major share of the proceeds of the fraudulent scheme and controlled the money, and substantial evidence of personal expenditures by Crosby, totaling some $260,000, while bills of the business went unpaid. While there were difficulties between Crosby and his lawyer, there is no evidence in the record of a breakdown in communication or that Altman was prevented from adequately presenting a defense. *See United States v. Wagner*, 834 F.2d 1474, 1482 (9th Cir. 1987); *Lowenfield v. Phelps*, 817 F.2d 285 (5th Cir.1987), *aff'd in part*, 484 U.S. 231,

---

**4.** For at least six weeks before trial Crosby assured Altman that Crosby's father was organizing these records. This turned out to be untrue. Crosby did not inform Altman about the true state of these records until very close to trial. For this reason, Judge Alsop was less than sympathetic when Crosby attempted to lay blame on his attorney for failing to adequately prepare these records.

**5.** Crosby contended that these California records were stored randomly throughout a warehouse along with furniture and other papers, and that he was the only person who could identify the relevant items. A problem arose because the conditions of Crosby's bail did not permit him to leave Minnesota. Crosby complained that Altman did not do whatever was necessary to remove this travel restriction.

**6.** The record does not reveal whether Crosby went to California.

108 S.Ct. 546, 98 L.Ed.2d 568 (1988). The decision whether to remove counsel was completely within the district judge's discretion. We are satisfied that Judge Alsop did not abuse his discretion in this case by denying Crosby's request.

### III.

■ Crosby also argues that he was prejudiced when counsel for defendant Cheatham questioned his brother Phillip Krzyzaniak, regarding whether Crosby knew when the trial was to begin and that he was supposed to be there. When Krzyzaniak took the stand, Cheatham's counsel indicated that he intended to examine Krzyzaniak on a number of issues, but the district court carefully limited the examination to Crosby's knowledge of the trial dates, the fact that he had planned to show up and that he did not. The district court ordered counsel not to examine the witness concerning the bond and who put it up, but that only "flight" evidence was admissible. In his reply brief Crosby argues that admission of evidence of flight requires a showing of immediacy linking flight to the time of commission or accusation of the offense charged. Crosby claims that evidence probing his voluntary absence from trial does not qualify as flight evidence because it fails this immediacy requirement. He further claims that his absence from trial is irrelevant when determining his guilt or innocence since the absence was not related in time to either the time of the alleged offense or the time of accusation.

We are not convinced by the argument. As the Sixth Circuit explained in *United States v. Touchstone*, 726 F.2d 1116, 1119 (6th Cir.1984):

"[F]light" is generally admissible as evidence of guilt, and ... juries are given the power to determine "how much weight should be given to such evidence." *United States v. Craig*, 522 F.2d 29, 32 (6th Cir.1975), ... [I]mmediacy "generally only becomes important in those cases where the defendant does not know, or his knowledge is doubtful, about the charges and accusations made against him." *United States v. Hernandez–Miranda*, 601 F.2d 1104, 1106 (9th Cir.1979).

*See also United States v. Peltier*, 585 F.2d 314, 322–24 (8th Cir.1978), *cert. denied*, 440 U.S. 945, 99 S.Ct. 1422, 59 L.Ed.2d 634 (1979) (discussing the probative value of flight evidence in determining guilt or innocence). Because Crosby knew the charges against him and his scheduled trial date, there was no abuse of discretion in admitting this evidence.

### IV.

■ Crosby's final argument is that the district court erred in conditioning probation on restitution of $550,000 to the victims of his fraud. He argues that the full $550,000 is not properly related to the offenses for which he was convicted. Crosby cites in his defense *United States v. Missouri Valley Construction Co.*, 741 F.2d 1542 (8th Cir.1984) (en banc), in which this court stated:

[W]here a defendant has been charged with crimes against several persons, but convicted on only some of the counts, the court may not order the defendant, as a condition of probation, to make payments to any persons who were not aggrieved by the precise acts charged in those counts on which conviction was had.

*Id.* at 1547. He argues that under *Missouri Valley*, the court can only sentence him to pay restitution to those forty-two victims who were expressly named in the indictment. Crosby's reading of *Missouri Valley* fails to recognize the true issue in that case. In *Missouri Valley*, the defendant corporation pled guilty to criminal conspiracy. In its sentence, the district judge imposed "as a condition of probation, in lieu of a fine, the requirement that [the corporation] contribute money to a charitable organization that [had] not suffered actual damages or loss from the corporation's criminal offense." *Missouri Valley*, 741 F.2d at 1544.[7] We vacated the sen-

---

7. The district judge imposed sentence pursuant to 18 U.S.C. § 3651 (1982 & Supp. II 1984) which was repealed, Act of Oct. 12, 1984, Title II, c. II, § 212(a)(2), 98 Stat.1987, but which still

tence because it required the defendant to pay restitution to someone other than a party "who suffered losses 'caused by the offense for which the conviction was had.'" *Id.* at 1547.

While *Missouri Valley* is not helpful to us, three days after the case before us was argued, the United States Supreme Court held in *Hughey v. United States,* — U.S. ——, 110 S.Ct. 1979, 109 L.Ed.2d 408 (1990), that a restitution order under 18 U.S.C. § 3579(a)(1) (1982) is limited to losses caused by the conduct underlying the offense of conviction.

Judge Alsop in his restitution order stated that the total loss for the twenty-five counts for which Crosby was convicted was $291,303. Should the court be without authority to order restitution in the amount of $550,000 for the 412 victims, we believe that under the principles of *Hughey* the $291,303 restitution figure is undoubtedly sustainable. We are satisfied, however, that the appropriate course is to remand the case to the district court for further consideration of its restitution order in light of *Hughey*. This panel will retain jurisdiction of this appeal. If either party is aggrieved after the entry of the district court's order reconsidering the restitution award in light of *Hughey*, we will give further consideration to this issue on an expedited basis.

applies to offenses committed prior to November 1, 1986. The relevant portion of § 3651 states:

> The court may revoke or modify any condition of probation, or may change the period of probation.

> .   .   .   .   .

> While on probation and among the conditions thereof, the defendant—

May be required to pay a fine in one or several sums; and

May be required to make restitution or reparation to aggrieved parties for actual damages or loss caused by the offense for which conviction was had....