**UNITED STATES of America,**
**Appellee,**

v.

**Elvis MOTA, Analque Franco Fernandez, Defendants–Appellants.**

**Nos. 07–0221–cr (L), 07–0643.**

United States Court of Appeals, Second Circuit.

May 27, 2008.

Jesse M. Furman, Assistant United States Attorney (Alexander J. Willscher, Jr. and Lev L. Dassin, Assistant United

States Attorneys, on the brief), for Michael J. Garcia, United States Attorney for the Southern District of New York, New York, NY, for Appellee.

Bobbi C. Sternheim, New York, NY, for Appellant Elvis Mota.

Present: ROGER J. MINER, JOSEPH McLAUGHLIN and ROSEMARY S. POOLER, Circuit Judges.

## SUMMARY ORDER

Defendant–Appellant Elvis Mota appeals from a judgment of the United States District Court for the Southern District of New York (Sprizzo, J. ), filed February 6, 2007, sentencing him to, inter alia, 130 months imprisonment for conviction of one count of Conspiracy to Distribute and Possession with Intent to Distribute, in violation of 21 U.S.C. Section 846.[1] Mota was convicted after a jury trial before Judge Peter J. Leisure. On this appeal, Mota raises two issues concerning the conduct of his trial either of which, if decided in his favor, he contends warrant a reversal of his conviction. We believe, however, that Mota's arguments with respect to both issues are meritless.

The first issue concerns the use at trial of a series of charts composed by the Government which served to summarize information received from telecommunications providers regarding hundreds of telephone calls made among the individuals involved in the heroin distribution conspiracy of which Mota was alleged to be a member. For example, one of the charts graphically sets forth the telephone calls made by and received from the cell phone of one "Beto" to other members of the conspiracy, including Mota, on the afternoon of November 30, 2005, the date of Mota's arrest. It is clear from the record that the charts were compiled from scores and scores of pages of billing records which, in the Government's words, set forth information regarding "thousands of different calls and other data."

The charts were introduced at trial through the testimony of Special Agent Charles Schuetz, of the Drug Enforcement Administration, who was the Government's final witness. Schuetz testified that although he had not created the charts himself, he had aided in their production, a task he had undertaken many times in his career. He also testified that he had been present throughout the trial in order to verify that the information contained in the charts accurately coincided with the testimony of various witnesses.

Schuetz was also subjected to cross-examination, through which he revealed certain limitations regarding the probative value of the charts. Most importantly, Schuetz admitted that the charts did not definitely record the maker and the recipient of any particular phone call. Rather, the charts could only reflect that a particular call was made on a cell phone owned by a certain individual and received on a cell phone belonging to another individual.

Mota does not challenge the admission into evidence of the charts because he concedes that "[t]elephone summary charts are admissible under Rule 1006 of the Federal Rules of Evidence." Rather, the gist of Mota's objection appears to be that the testimony of Special Agent Schuetz should not have been allowed because Schuetz did not testify as an expert and his testimony "exceeded the bounds of opinion testimony by a lay witness."

---

1. By order of the Court, the appeal of Analque Franco Fernandez is hereby severed. The clerk should adjust the caption accordingly.

■ This argument fails for several reasons. First, Mota cites no law requiring the introduction of summary evidence through expert testimony. Further, it is not completely clear what Mota means by the assertion that Agent Schuetz's testimony "was tantamount to a third government summation, and effectively usurped the jury's fact finding role." But it cannot mean that the jury was not aware that "the charts contained contested evidence" because, as already noted, Schuetz was subjected to cross-examination during which he forthrightly admitted the limits of the charts' probative value. (And Mota is clearly wrong in asserting that an admission of the chart's limited probative value is equivalent to a concession that they were "inaccurate.") Finally, it is plain that Judge Leisure's instruction to the jury concerning the charts was cautionary and in fact contained the admonition that "[y]ou're in a position to reject the summary charts if you don't think they're helpful, or if you disagree with them."

We review a trial judge's decisions concerning evidentiary matters, such as the admission into evidence of summary charts and the use of non-expert opinion testimony, for abuse of discretion. *See United States v. Pinto*, 850 F.2d 927, 935 (2d Cir.1988) (summary charts); *United States v. Garcia*, 413 F.3d 201, 210 (2d Cir.2005) (lay witness opinion testimony). We find that Judge Leisure's decisions concerning the use of the Government's charts at Mota's trial were well within his discretion.

The second issue raised by Mota concerns Judge Leisure's decision to allow an instruction to the jury concerning flight as evidence of a defendant's guilt. A trial judge's decision to instruct the jury as to flight as evidence of guilt is reviewed for abuse of discretion. *See United States v. Amuso*, 21 F.3d 1251, 1259 (2d Cir.1994).

When Mota and a coconspirator, Analque Fernandez, were arrested, they were initially confronted by federal agents in the lobby of the apartment building of Beverly Gomez, another co-conspirator. It is uncontested that, upon seeing the agents, Fernandez bolted out the door of the building, and was caught after a brief chase. But Mota contends that "the testimony is equivocal concerning [his] reaction" upon seeing the agents. Mota himself did not testify. And while Gomez testified that Mota "started running towards the door," and one of the agents testified that Mota "began to run," it appears that he was immediately captured before he reached the door of the building. In Mota's view, this amounts to "reflexive motion" which is "an inadequate evidentiary predicate to warrant an instruction as to flight."

■ Quoting *United States v. Sanchez*, 790 F.2d 245, 252 (2d Cir.1986), Mota states that a jury instruction regarding flight is improper if the evidence of flight presented at trial does nothing more than "provide the jury with ... an opportunity for mere conjecture and speculation" that flight actually took place. But, as set forth above, Mota himself plainly acknowledges that the evidence of flight was not ephemeral, but "equivocal." The jury could thus decide whether or not Mota took flight based upon its weighing of the evidence, not upon conjecture and speculation. Further, Judge Leisure's jury instruction in this regard was certainly not improper because it states both that the fact of Mota's flight had not been proven and that flight itself "do[es] not necessarily reflect actual guilt." Under the abuse of discretion standard, Judge Leisure's decision to so instruct the jury was not improper.

For the reasons stated above, the judgment of conviction and sentence imposed

by the district court is hereby AF-FIRMED.