**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**William DAVIDSON,**
**Defendant–Appellant.**

**No. 90–1695.**

United States Court of Appeals,
Sixth Circuit.

Argued March 15, 1991.

Decided June 18, 1991.

Rehearing Denied July 25, 1991.

F. William Soisson, Office of the U.S. Atty., Detroit, Mich., E. James King (argued), Detroit, Mich., for plaintiff-appellee.

Stephen T. Rabaut (argued), Roseville, Mich., for defendant-appellant.

Before MARTIN and MILBURN, Circuit Judges, and ENGEL, Senior Circuit Judge.

MILBURN, Circuit Judge.

Defendant-appellant William Davidson appeals his conviction for conspiracy to possess with intent to distribute heroin and cocaine in violation of 21 U.S.C. §§ 841(a)(1) and 846. For the reasons that follow, we reverse.

I.

On October 20, 1988, a ten-count federal indictment was returned against William Davidson, William Guild, Marvin Mulligan, and Joy Mulligan. Defendant-appellant William Davidson was charged only in Count VII of the indictment with the offense of conspiring with Marvin Mulligan and William Guild to possess with intent to distribute heroin and cocaine in violation of 21 U.S.C. §§ 841(a)(1) and 846.

Count I of the indictment charged Marvin Mulligan with evading the payment of taxes for the calendar years 1977 and 1978. Counts III through VI charged Marvin Mulligan with filing false income tax returns for the years 1982 through 1985. Counts VIII and IX charged Marvin Mulligan and William Guild with aiding and abetting the distribution of cocaine and heroin in 1984, and Count X sought criminal forfeiture of certain property owned by Marvin Mulligan. Count II of the indictment, which charged Marvin and Joy Mulligan with conspiracy to defraud the United States, was dismissed by the government prior to trial. William Guild pleaded guilty to the charges against him, and he testified as a government witness against William Davidson and Marvin Mulligan.

The trial of Davidson and Mulligan was scheduled to commence on January 4, 1990; however, as Mulligan failed to appear, the district judge issued a bench warrant for Mulligan and, being unable to cause him to appear, adjourned the trial. Thereafter, the government filed a motion to proceed in absentia as to Mulligan, and the motion was granted on January 17, 1990.

The trial of Davidson and Mulligan, in absentia, commenced on February 26, 1990, and on March 1, 1990, the jury returned verdicts convicting Davidson of Count VII and Mulligan of Count I and Counts III

through X. On June 4, 1990, Davidson was sentenced to a term of ten years imprisonment. Davidson timely filed the present appeal.

The principal issues on appeal are (1) whether the search warrant for Davidson's residence was supported by probable cause, (2) whether counts in the indictment were misjoined under Federal Rule of Criminal Procedure 8(b), and (3) whether counts in the indictment should have been severed pursuant to Federal Rule of Criminal Procedure 14.

II.

A. Search Warrant

On August 11, 1989, a search warrant was obtained for William Davidson's residence at 30300 Twelve Mile Road, Apartment 101, Farmington Hills, Michigan. The warrant was supported by an affidavit submitted by Drug Enforcement Administration Special Agent Richard Fling. The affidavit stated that Fling was currently working with the Internal Revenue Service (IRS) and the Michigan State Police on an investigation of the distribution of large quantities of cocaine and heroin by an organization whose members included Marvin Mulligan and William "Candy" Davidson. Fling stated in the affidavit that he was aware that Mulligan had a criminal history which included a 1978 conviction for possession with intent to distribute heroin, and that Davidson had a criminal record of narcotics violations. The affidavit described surveillance reports from November 2, 1988, until August 9, 1989, of meetings between Mulligan, Davidson and "other individuals known to have criminal records for illegal drug distribution."

The affidavit states that on March 14, 1989, IRS agents observed Marvin Mulligan depart from his residence at 1771 Alexander Road, Bloomfield Township, Michigan, and drive to a Denny's Restaurant in Southfield, Michigan. At the restaurant, Mulligan was observed meeting with an individual who later departed in a 1987 Lincoln bearing Florida license plate DCZ 58H. The affidavit states that Florida De-

partment of Motor Vehicle records indicate that the Lincoln is registered to Benigno Fernandez. The affidavit also states that Drug Enforcement Administration intelligence files indicate that Benigno Fernandez is a suspected cocaine trafficker.

Later in the day on March 14, 1989, IRS agents observed Mulligan arrive at William Davidson's residence at 30300 Twelve Mile Road, Farmington Hills, Michigan. At approximately 5:00 p.m., Mulligan and Davidson departed the residence in a black Mercedes and drove to a Wendy's restaurant about two blocks away where Mulligan used a public telephone. After a few minutes, Mulligan and Davidson drove to the Mama Loricchio Restaurant, located next to the Wendy's restaurant. Mulligan and Davidson entered the restaurant and remained there approximately ten minutes before leaving and driving to the Golden Mushroom Restaurant in Southfield, Michigan. In the parking lot of the restaurant, surveillance officers observed the Lincoln registered to Benigno Fernandez which had been seen earlier in the day at the Denny's restaurant. Mulligan and Davidson entered the restaurant and remained there for approximately two and one-half hours. Mulligan left the restaurant driving the black Mercedes in which he and Davidson had arrived. Davidson left the restaurant in the Lincoln with at least two other individuals, one of whom was the same person earlier observed meeting with Mulligan at Denny's. The Lincoln was driven to Davidson's residence, where all the occupants exited the vehicle.

On May 3, 1989, IRS special agents observed Mulligan meeting with Davidson and an individual named Arturo Montano at an apartment building located at 5064 Heather Drive, Dearborn, Michigan. Davidson and Montano arrived at the meeting in the Lincoln registered to Benigno Fernandez. Agent Fling states in the affidavit that he is aware that Arturo Montano has a criminal history of at least one federal drug violation conviction.

On July 14, 1989, surveillance officers observed Marvin Mulligan depart from his residence and drive to William Davidson's residence. Mulligan then traveled to a Bob Evans Restaurant in Livonia, Michigan, where he was observed meeting with an individual named Robert "Sonny" Habucke. While at the restaurant, a Michigan State Police Officer overheard a conversation between Mulligan and Habucke during which Habucke said, "I need that stuff. I need two." Mulligan responded, "Look, don't worry about it, I just talked to Candy [Davidson] and he said that he would take care of it."

On July 18, 1989, surveillance officers again observed Mulligan depart from his residence and drive to Davidson's residence. Within ten minutes Mulligan and Davidson exited the residence and drove to the Bob Evans Restaurant in Livonia, Michigan, where they were observed meeting with Habucke. On August 8, 1989, officers observed Mulligan depart from his residence and drive to Davidson's residence where he remained for approximately forty-five minutes. Mulligan then departed Davidson's residence and drove to the Bob Evans restaurant, where he was again observed meeting with Habucke. While at the restaurant, an officer overheard Mulligan say to Habucke that "he could make one or one and one-half."

At the conclusion of the affidavit, agent Fling stated that based upon his experience and training, and upon the information cited in the affidavit, he had probable cause to believe that Davidson, in association with Mulligan and others, was conducting an illicit narcotics business from his residence. The search of Davidson's apartment was conducted on August 11, 1989, during which a quantity of fentanyl, a schedule II controlled substance, was seized.

Prior to the trial, Davidson and the other defendants filed a consolidated motion to suppress evidence discovered during searches conducted in the investigation of this case, and the district court denied the motion on January 16, 1990. Davidson argues that the search of his apartment was unconstitutional because it was conducted without probable cause to believe that evidence or contraband would be found at his

apartment. Davidson argues that the affidavit of agent Fling is barren of any factual averments pertaining to his apartment. Davidson notes that officers did not observe drugs or evidence going into or out of his apartment on any occasion.

Davidson also argues that although the affidavit described various meetings among the defendants, the surveillance officers did not claim to have actually witnessed any crimes, and he contends that the alleged "expertise and experience" of law enforcement officers regarding drug trafficking is not a proper substitute for missing facts. Davidson argues that while the information in Fling's affidavit may have led officers to suspect that he was involved in "nefarious" activities, it did not establish probable cause to believe that fruits, instrumentalities or evidence of criminal acts would be found at his apartment. Therefore, Davidson argues that the evidence seized from his apartment should have been suppressed.

■ "The standard of review in this case is whether the magistrate had a substantial basis for finding that the affidavit established probable cause to believe that the evidence would be found at the place cited." *United States v. Loggins*, 777 F.2d 336, 338 (6th Cir.1985) (per curiam). "The courts should not undertake a *de novo* review of the sufficiency of an affidavit, nor should they 'invalidate [a] warrant by interpreting [an] affidavit in a hypertechnical, rather than a commonsense, manner.'" *United States v. Pelham*, 801 F.2d 875, 877 (6th Cir.1986) (citation omitted), *cert. denied*, 479 U.S. 1092, 107 S.Ct. 1305, 94 L.Ed.2d 160 (1987). Rather, the magistrate's probable cause determination should be afforded great deference by the reviewing court. *Id.* "Probable cause exists when there is a 'fair probability,' given the totality of the circumstances, that contraband or evidence of a crime will be found in a particular place." *Loggins*, 777 F.2d at 338.

■ Our review of the affidavit in this case reveals a substantial basis for concluding that a search of Davidson's apartment "would uncover evidence of wrongdoing."

*Illinois v. Gates*, 462 U.S. 213, 236, 103 S.Ct. 2317, 2331, 76 L.Ed.2d 527 (1983). Davidson correctly points out that the affidavit does not state that officers observed drugs or evidence going into or out of his residence. However, "probable cause requires only a probability or substantial chance of criminal activity, not an actual showing of such activity." *Gates*, 462 U.S. at 244 n. 13, 103 S.Ct. at 2335 n. 13.

In this case, the totality of the circumstances reported in the affidavit presented a "pattern of activity" consistent with drug trafficking. *See United States v. Espinosa*, 827 F.2d 604, 610 (9th Cir.1987), *cert. denied*, 485 U.S. 968, 108 S.Ct. 1243, 99 L.Ed.2d 441 (1988). The affidavit included surveillance reports of frequent meetings between Davidson, Mulligan, and individuals known to have been convicted of drug offenses and individuals whom Drug Enforcement Administration (DEA) files indicated were suspected drug traffickers. The affidavit also stated that Davidson was observed on more than one occasion traveling in an automobile having Florida license plates and registered to an individual whom DEA files indicated was a suspected drug trafficker. *See Gates*, 462 U.S. at 243, 103 S.Ct. at 2335 ("Florida is well-known as a source of narcotics and other illegal drugs."); *Espinosa*, 827 F.2d at 610 (use of vehicle registered to an individual who had prior drug arrest). The affidavit also reported that Mulligan was observed using a public telephone on more than one occasion when he and Davidson were together. *See United States v. Del Vizo*, 918 F.2d 821, 826 (9th Cir.1990) (use of public telephones is typical of narcotics traffickers and may be considered in evaluating probable cause).

The magistrate's finding of probable cause is also supported by two specific surveillance reports in the affidavit. On July 14, 1989 officers observed Mulligan travel to Davidson's apartment and subsequently meet with Robert "Sonny" Habucke. The affidavit states that an officer overheard a conversation between Mulligan and Habucke in which Habucke made cryptic references to drugs, and Mulligan said

that he had "just talked to Candy [Davidson] and he said that he would take care of it." Moreover, on August 8, 1989, officers again observed Mulligan travel to Davidson's apartment and subsequently meet Habucke at a restaurant where Mulligan was overheard making a cryptic reference to drugs. These surveillance reports, when viewed in connection with the totality of the circumstances presented in the affidavit, created a "fair probability" that Davidson was engaged in the distribution of illegal drugs, and the magistrate reasonably inferred that evidence would be found at Davidson's residence. *See United States v. Terry*, 911 F.2d 272, 275 (9th Cir.1990) (magistrate permitted to draw reasonable inferences about where evidence is likely to be kept based on nature of the evidence and type of offense); *United States v. Angulo–Lopez*, 791 F.2d 1394, 1399 (9th Cir. 1986) ("In the case of drug dealers, evidence is likely to be found where the dealers live.").

The Supreme Court has indicated that "the resolution of doubtful or marginal cases in this area should be largely determined by the preference to be accorded to warrants." *Gates*, 462 U.S. at 237 n. 10, 103 S.Ct. at 2331, n. 10 (quoting *United States v. Ventresca*, 380 U.S. 102, 109, 85 S.Ct. 741, 746, 13 L.Ed.2d 684 (1965)). Moreover, the magistrate's probable cause determination is to be given deference by the reviewing court. *Pelham*, 801 F.2d at 877. Because only the probability, and not a prima facie showing, of criminal activity is the standard of probable cause, we hold that the "totality of the circumstances" presented in the affidavit provided a substantial basis for finding probable cause to search Davidson's residence.

Davidson also challenges the credibility and reliability of "unidentified informants" named in Fling's affidavit. Davidson asserts that none of the informants were identified, and that surveillance did not sufficiently verify the informants' allegations. However, only one paragraph in Fling's fourteen-page affidavit makes reference to information provided by an informant, and it states:

I am further aware that in March 1989, Drug Enforcement Administration informant number four (4) told a Special Agent of the Drug Enforcement Administration that William Guild was distributing heroin and that Guild had told the informant that his source of supply was Marvin Mulligan.

This information relates to Mulligan and another defendant, not to Davidson. The preceding discussion demonstrates that even without considering the unidentified informant's statement, the affidavit established probable cause to believe that evidence would be found at Davidson's residence. Therefore, we reject this argument as meritless.

Davidson next argues that it was unreasonable for Special Agent Fling to rely on the warrant because he was "reckless" in preparing the affidavit and "could not have harbored an objectively reasonable belief in the existence of probable cause." *United States v. Leon*, 468 U.S. 897, 926, 104 S.Ct. 3405, 3422, 82 L.Ed.2d 677 (1984). Davidson asserts that the affidavit was "so lacking in indicia of probable cause," that any "official belief in its existence" was rendered "entirely unreasonable." *Id.* at 923, 104 S.Ct. at 3421. Having concluded that the affidavit established probable cause to support the issuance of the search warrant, there is no need for us to address this argument.

## B. Joinder

Prior to commencement of the trial, the defendants filed a consolidated motion to sever Counts I through VI, the tax counts, from Counts VII through X, the narcotics counts. The defendants argued that the counts were misjoined under Federal Rule of Criminal Procedure 8(a) and 8(b), and that even if joinder was technically proper, the court should nevertheless grant a severance pursuant to Federal Rule of Criminal Procedure 14. The district court denied the motion in an order entered on January 16, 1990.

Davidson argues that there was an insufficient nexus between the tax charges and the narcotics charges to justify joinder un-

der Rule 8(b), and he asserts that joinder of the charges prejudiced him by creating a basis for the government to establish that Mulligan was a self-confessed drug trafficker from the late 1970s. At the trial, the government introduced an amended tax return filed by Mulligan on November 9, 1982, for the 1977 calendar year which stated that his income was derived from "gambling and narcotics." Davidson contends that failure to sever the counts denied him a fair trial and requires reversal of his conviction.

Rule 8(b) provides that two or more defendants may be charged in the same indictment "if they are alleged to have participated in the same act or transaction or in the same series of acts or transactions constituting an offense or offenses." "Under Rule 8(b) multiple defendants may be joined only if a sufficient nexus exists between the defendants and the single or multiple acts or transactions charged as offenses." *United States v. Johnson*, 763 F.2d 773, 775 (6th Cir.), *cert. denied*, 474 U.S. 862, 106 S.Ct. 178, 88 L.Ed.2d 148 (1985). However, we have held that "Rule 8(b) should be construed to favor joinder in order to promote judicial economy." *Id.* at 776.

Even if joinder is proper under Rule 8, the court may grant a severance under Rule 14 "[i]f it appears that a defendant ... is prejudiced by a joinder of offenses or defendants in an indictment." Fed.R. Crim.P. 14. "[T]he denial of a severance 'will not be disturbed on review unless the district court abused its discretion in denying the motion.'" *United States v. Zalman*, 870 F.2d 1047, 1053 (6th Cir.), *cert. denied*, 492 U.S. 921, 109 S.Ct. 3248, 106 L.Ed.2d 594 (1989). "In order to justify reversal of a criminal conviction upon a district court's denial of a motion to sever, the defendant has the burden of proving that substantial prejudice resulted from the court's failure to grant a separate trial." *Id.*

Davidson was charged in only one count of the indictment, while Mulligan was charged in all ten counts. The charges against Mulligan included tax evasion and

filing false income tax returns, and these charges were unrelated to the conspiracy charge against Davidson. Proof of the charges against Mulligan occupied a substantial portion of the four day trial and included an amended tax return Mulligan filed for the 1977 calendar year which stated that his income was derived in part from "narcotics."

We conclude that Davidson was denied a fundamentally fair trial. *See United States v. Moore*, 917 F.2d 215, 220 (6th Cir.1990). Davidson suffered substantial prejudice from the spillover effect of the proof of the unrelated tax charges against his absent co-defendant and especially the introduction of his absent co-defendant's amended tax return for the 1977 calendar year. A defendant who fails to appear for his trial may be tried in absentia. *See United States v. Mera*, 921 F.2d 18 (2d Cir.1990) (per curiam); *United States v. Crosby*, 917 F.2d 362 (8th Cir.1990). However, where there are multiple defendants, the in absentia trial of one defendant must not result in prejudice to the other defendants. Prejudice may be avoided by severing offenses or defendants pursuant to Rule 14. Under the circumstances involved in this case, we hold that the district court committed reversible error, which clearly was not harmless, and abused its discretion by failing to sever the unrelated tax charges against Mulligan.

### III.

Accordingly, Davidson's conviction is REVERSED, and his case is REMANDED for a new trial consistent with this opinion.

ENGEL, Senior Circuit Judge, dissenting.

While concurring with the majority in its determination that the search warrant was supported by probable cause, I respectfully dissent from its determination that Davidson was denied a fundamentally fair trial when the trial court refused to sever the separate tax charges in the indictment which pertained only to the absent co-defendant Mulligan. The tax charges against Mulligan relate to income which he alleg-

edly received through his illicit narcotics dealing, evidence which in any event was admissible in connection with the conspiracy charge in which both he and Davidson were named. Thus a severance of the tax counts would in my judgment have resulted in little or no change in the evidence which was presented to the jury on the conspiracy alone.

As the majority correctly points out, we have held in *United States v. Zalman*, 870 F.2d 1047, 1053 (6th Cir.1989), that "in order to justify reversal of a criminal conviction upon a district court's denial of a motion to sever, the defendant has the burden of proving that substantial prejudice resulted from the court's failure to grant a separate trial." It is true here that there was a good deal of independent evidence, especially on the first day of trial relating to the tax counts and that most of that evidence would probably not have been admitted or admissible had the tax counts been severed. At the same time nothing could be more clear, even without the careful instructions given by the trial judge, than that these counts related only to Mulligan. No similar evidence of income tax evasion or even participation in that aspect of the case on the part of Davidson was even suggested to the jury and I simply fail to see in what particular there could have been such a spill-over effect upon Davidson's case.

I am not quite certain whether the majority would have found reversible error had Mulligan been present and not tried in abstentia but infer from the language used that the majority was at least influenced to a good extent by this circumstance as well as the proof of the tax charges as they related only to Mulligan. I am not certain whether the majority would have found prejudice had the tax charges been severed but Mulligan still tried in abstentia with Davidson. It seems fair to conclude that the majority, however, believed that the combination of circumstances was at least enough to enable Davidson to bear his burden of proving the substantial prejudice standard under *Zalman*. All this seems to boil down to a difference in judgment between myself and the majority on that question. I would note that while *Mulligan* was not present, he was at all times represented by counsel during the trial, and that counsel actively participated in his defense thus dissipating much of the prejudice that might otherwise have attached to this factor. Conceivably it could even have favored Davidson since he could be seen by the jury as at least having the fortitude to come to court in person and face the music. More importantly, however, I simply cannot see how the highly individualized nature of the evidence concerning the tax charges could be regarded by any of the jurors as having any particular bearing upon the question of Davidson's guilt. "[A] jury is presumed capable of sorting out evidence and considering each count and each defendant separately[.]" *United States v. Swift*, 809 F.2d 320, 323 (6th Cir.1987). Accordingly I respectfully dissent.