948 F.2d 1291
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES of America, Plaintiff-appellee,
v.
Michael Allen ZSIDO, defendant-appellant.
 No. 91-1070.
 United States Court of Appeals, Sixth Circuit.
 Nov. 12, 1991.
 
 1
 Before RYAN, Circuit Judge; WELLFORD, Senior Circuit Judge; and HIGGINS, District Judge.*
 
 
 2
 HIGGINS, District Judge.
 
 
 3
 Defendant-appellant, Michael Allen Zsido, appeals his conviction of being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1). For the reasons that follow, we affirm.
 
 I.
 
 4
 On August 21, 1990, a federal indictment was returned, charging appellant Zsido with two counts of being a convicted felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1). On September 17, 1990, the appellant filed a motion to suppress the evidence seized from his residence, and a suppression hearing was held on the day of trial. At the conclusion of the evidence, the District Court, in an oral opinion, found the existence of probable cause and denied the appellant's motion. Thereafter, pursuant to a plea agreement, the defendant pleaded guilty to Count I of the indictment, and the government dismissed Count II. In this plea agreement, the appellant reserved the right to appeal the denial of his motion to suppress. Thus, the issue before us is whether the search warrant for the defendant's residence was supported by probable cause.
 
 II.
 
 5
 On April 26, 1989, a confidential informant employed at the All World Scientific and Chemical Company in Lynnwood, Washington, contacted the Seattle DEA and informed Special Agent Tony Stapleton that an individual identifying himself as "Joe Gruber" ordered ten pounds of the chemical L-Ephedrine HCL and two pounds of the chemical Red Phosphorous. When used together, these two chemicals act to manufacture methamphetamine, a Schedule III controlled substance. The chemicals in the proportions here would yield approximately eight pounds of methamphetamine.
 
 
 6
 Gruber paid $2,200.00 in cash (via twenty-two $100 bills) and requested delivery to a post office box in Colburn, Idaho. According to the confidential informant, Gruber further stated that he was purchasing the chemicals for a "Bill Williams." All World, however, notified Gruber that they would not ship the chemicals to a post office box. Thereafter, an individual purporting to be Bill Williams instructed All World to ship the chemicals to "Kay Wysocki" at 6917 Ashton, Detroit, Michigan 48228.
 
 
 7
 On May 11, 1989, Agent Stapleton contacted Detroit DEA Agent Joseph Rannazzisi, and informed him of this information. Agent Stapleton further told Agent Rannazzisi that All World contracts with the H. Reisman Corporation in Orange, New Jersey, for the sale and delivery of L-Ephedrine HCL. Conducting an independent investigation, Agent Rannazzisi determined that 1) records of the Office of the Michigan Secretary of State revealed that a "Kelly Lee Wysocki" possessed a driver's license registered at 6917 Ashton, Detroit, and that a Pontiac was registered to "Kelly Wysocki" at that address; 2) that telephone and utilities records for that address were in the name of "Kelly Wysocki"; and 3) that between April 1 and May 26, 1989, telephone calls were made from that address to four chemical companies--one in California, one in Illinois, and two in Wisconsin--but none to All World. Further, Agent Rannazzisi spoke with a DEA chemist and learned that the combination of L-Ephedrine HCL, Red Phosphorous, and Hydriotic Acid have no other purpose than the manufacture of methamphetamine. The chemist also stated that the manufacturing cycle for methamphetamine is twenty-four hours, and that the operation of an illegal methamphetamine lab poses an immediate danger of fire and explosion.
 
 
 8
 On May 17, 1989, United Parcel Service officials in Detroit informed Agent Rannazzisi that they had received a container addressed to "Kay Wysocki" at 6917 Ashton, Detroit, from the H. Reisman Corporation. Agent Rannazzisi seized the container and opened it to reveal a white crystalline powder resembling L-Ephedrine HCL.
 
 
 9
 On May 22, 1989, DEA agents placed an electronic tracking device in the container, and over the course of the next four days, attempted, on seven occasions, to make a "controlled delivery" of the container. All efforts to deliver the package failed. Surveillance of the premises, however, revealed that on at least two of the attempts the house was occupied by a white male later identified as defendant Zsido. Further, on May 26, while attempting to deliver the package, two children approached the DEA delivering agent and informed him that their mother usually signed for packages at the Ashton address. Also on May 26, after two attempts to deliver the package, a white female opened the door and looked around after a DEA delivery agent had left the premises.
 
 
 10
 Shortly after a third unsuccessful attempt to deliver the package on May 26, the white female left the house, entered a 1976 Camero parked in the driveway, and left the area. This car was registered to "Kelly Wysocki" at 6917 Ashton.
 
 
 11
 With this information, and believing that the occupants of the house were deliberately avoiding delivery of the package, Agent Rannazzisi obtained a search warrant for the premises at 6917 Ashton, on May 26, 1989.
 
 
 12
 DEA agents drove to the T & Z Hardware store, where previous surveillance revealed the defendant worked. The agents informed the defendant of the search warrant for the residence and asked the defendant for a key to enter the house so as to avoid damage to the residence. The defendant accompanied the agents to the house and informed them of the location of two firearms therein. During the search of the house, DEA agents learned that defendant Zsido was a convicted felon.
 
 
 13
 No chemicals or raw materials used in the manufacture of methamphetamine were found at 6917 Ashton.
 
 III.
 
 14
 "The standard of review in this case is whether the magistrate had a substantial basis for finding that the affidavit established probable cause to believe that the evidence would be found at the place cited." United States v. Loggins, 777 F.2d 336, 338 (6th Cir.1985) (per curiam). See also United States v. Davidson, 936 F.2d 856, 859 (6th Cir.1991). Furthermore, appellate courts "should not undertake a de novo review of the sufficiency of an affidavit...." United States v. Pelham, 801 F.2d 875, 877 (6th Cir.), cert. denied, 479 U.S. 1092, 107 S.Ct. 1305, 94 L.Ed.2d 160 (1987). Because the issue of probable cause is a "commonsense, practical question," Illinois v. Gates, 462 U.S. 213, 230, 103 S.Ct. 2317, 2328, 76 L.Ed.2d 527, 543 (1983), " 'courts should not invalidate [a] warrant[ ] by interpreting [an] affidavit[ ] in a hypertechnical, rather than a commonsense, manner.' " Id. 462 U.S. at 236, 103 S.Ct. at 2331, 76 L.Ed.2d at 547 (citation omitted). Rather, a reviewing court should afford "great deference" to a magistrate's determination of probable cause. Id.
 
 
 15
 "Probable cause is defined as reasonable grounds for belief, supported by less than prima facie proof but more than mere suspicion." United States v. Bennett, 905 F.2d 931, 934 (6th Cir.1990). It exists where "there is a fair probability that contraband or evidence of a crime will be found in a particular place." Gates, 462 U.S. at 238, 103 S.Ct. at 2332, 76 L.Ed.2d at 548. This determination is made based upon consideration of the "totality of the circumstances." Id. 462 U.S. at 230, 103 S.Ct. at 2328, 76 L.Ed.2d at 543. All that is required is that " 'enough information be presented to the [magistrate] to enable him to make the judgment that the charges are not capricious and are sufficiently supported to justify bringing into play the further steps of the criminal process.' " Id. 462 U.S. at 231 n. 6, 103 S.Ct. at 2328 n. 6, 76 L.Ed.2d at 543 n. 6 (citation omitted).
 
 
 16
 After reviewing Agent Rannazzisi's affidavit, we hold that the Magistrate Judge had a substantial basis for concluding that a search warrant for the premises of 6917 Ashton "would uncover evidence of wrongdoing." Id. 462 U.S. at 236, 103 S.Ct. at 2331, 76 L.Ed.2d at 547.
 
 
 17
 The appellant argues that, under the totality of the circumstances test of Illinois v. Gates, the supporting affidavit to the search warrant failed to establish probable cause to believe that evidence of a crime would be found on the premises. According to the appellant, the facts of the case do not establish that the defendant ordered the chemicals or was operating a methamphetamine lab. The appellant points to the testimony of Agent Rannazzisi at the suppression hearing, at which the agent stated that, while telephone records revealed several calls to various chemical companies, none had been made to All World. The appellant argues that the government presented no evidence that any of these companies had ever delivered chemicals to the defendant's residence.
 
 
 18
 Further, the appellant refers to Agent Rannazzisi's testimony that the Ashton residence did not fit the "profile" of a clandestine methamphetamine lab. Agent Rannazzisi testified that he did not smell the distinctive odor associated with the cooking of methamphetamine nor did he notice a ventilation fan; the residence was not in a rural area; the utility records for the residence indicated no increase in electrical or gas consumption; the windows were not painted over; and no one had noticed any delivery of chemical glassware to the residence.
 
 
 19
 Finally, the appellant argues that the repeated failure on the part of the DEA to deliver the package of Ephedrine actually undercuts a finding of probable cause. At oral argument, counsel for the appellant asserted that this affidavit placed Mr. Zsido in a "damned if you do, damned if you don't" position, i.e., that probable cause may be found regardless of whether or not the package was accepted at the residence.
 
 
 20
 This Court has recognized, however, that " 'probable cause requires only a probability or substantial chance of criminal activity, not an actual showing of such activity.' " Davidson, 936 F.2d at 859 (quoting Gates, 462 U.S. 244 n. 13, 103 S.Ct. 2335 n. 13, 76 L.Ed.2d at 552 n. 13). Indeed, this Court has previously upheld the validity of a search warrant despite the lack of evidence of the actual commission of a crime. See id. Therefore, it was not necessary for Agent Rannazzisi to include evidence of an operational methamphetamine lab to support a finding of probable cause.
 
 
 21
 In addition, the Supreme Court has held that "innocent behavior frequently will provide the basis for a showing of probable cause...." Gates, 462 U.S. 244 n. 13, 103 S.Ct. 2335 n. 13, 76 L.Ed.2d at 552 n. 13. Here, neither Ms. Wysocki nor the appellant opened the door and affirmatively refused to accept the package. Instead, Agent Rannazzisi states in the affidavit his belief that "the above mentioned persons observed at 6917 Ashton are avoiding delivery of above mentioned container containing L-Ephedrine HCL." See joint appendix, p. 42.
 
 
 22
 Considering the totality of the circumstances outlined in the affidavit, we conclude that Agent Rannazzisi set forth sufficient facts to support a finding of probable cause to believe that evidence of a crime would be found on the premises. The affidavit stated that "Joe Gruber" ordered these chemicals on behalf of "Bill Williams"; that "Bill Williams" told All World to ship the chemicals to "Kay Wysocki" at 6917 Ashton, Detroit; that, when combined with Hydriotic Acid, these chemicals can only manufacture methamphetamine; that, in the proportions here, the chemicals would yield approximately 700,000 five milligram dosage units; that the manufacturing cycle of methamphetamine was twenty four hours; that the manufacture of methamphetamine poses imminent danger of fire and explosion; that these chemicals were purchased with untraceable cash, a tactic often used by manufacturers of illegal drugs; that motor vehicle, utility and telephone records revealed that "Kelly Wysocki" lived at 6917 Ashton; that telephone toll records revealed calls to four other chemical companies; that the package, when opened, appeared to contain L-Ephedrine HCL; and that the occupants of the house were deliberately avoiding delivery of the package. The facts that the package was addressed to 6917 Ashton, that phone calls to other similar chemical companies were made from that address, and that the appellant and Ms. Wysocki appeared to avoid repeatedly--as opposed to refuse--delivery are of particular significance. We find that these three facts, together with the other elements of the affidavit, sufficiently establish a nexus between the evidence sought and the premises searched.
 
 
 23
 The appellant next argues that the good faith exception articulated in United States v. Leon, 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984), should not apply in this case because the issuing magistrate abandoned his role as a neutral and detached judicial officer in issuing a search warrant not based on probable cause, and because the executing officers could not have reasonably relied on the validity of a search warrant so lacking in probable cause. We find it unnecessary to address the Leon exception.
 
 
 24
 Finally, the appellant attempts to construe this search warrant as an "anticipatory search warrant," the validity of which hinged on the success of the controlled delivery. See, e.g., United States v. Rey, 923 F.2d 1217 (6th Cir.1991). Relying on the "sure course" rule as articulated in United States v. Garcia, 882 F.2d 699, 702 (2d Cir.), cert. denied, --- U.S. ----, 110 S.Ct. 348, 107 L.Ed.2d 336 (1989), and United States v. Hendricks, 743 F.2d 653, 655 (9th Cir.1984), cert. denied, 470 U.S. 1006, 105 S.Ct. 1362, 84 L.Ed.2d 382 (1985), the appellant argues that, with an anticipatory warrant, the contraband in question must be on a sure course to the target premises in order for the search warrant to be valid. If the contraband does not, in fact, arrive at the target destination, the warrant is void. In Rey, this Court upheld a search under an anticipatory search warrant because law enforcement agents had successfully delivered the contraband to the defendant's residence. This Court stated, however, that "[i]f the controlled delivery had not occurred, then the warrant would have been void." Rey, 923 F.2d at 1221. Appellant Zsido argues that it is clear from the agents' investigation that probable cause focused on the package to be sent to the defendant's residence. Therefore, because DEA agents had repeatedly failed to make a controlled delivery here, the search warrant must fail.
 
 
 25
 The appellant overlooks one essential fact: this case does not involve an anticipatory search warrant. Probable cause existed when Agent Rannazzisi obtained the warrant and was in no way contingent on the successful completion of a controlled delivery of the Ephedrine. Rey is distinguishable because, in that case, the supporting affidavit expressly requested a warrant "subsequent to the delivery of the package tomorrow." Rey, 923 F.2d at 1221. Here, however, no such anticipatory request was made. Indeed, Agent Rannazzisi's affidavit specifically describes the repeated, unsuccessful attempts to deliver the package. In this regard, the inability of the DEA agents to convey the package to the Ashton address supported the finding of probable cause, instead of nullifying it.
 
 
 26
 IV. Conclusion.
 
 
 27
 Accordingly, for the foregoing reasons, we AFFIRM the determination of the District Court.
 
 WELLFORD, Senior Circuit Judge, concurring:
 
 28
 I find the facts of this case, which are well set out by Judge Higgins, to present a very close and difficult question of probable cause. I am persuaded to concur by our earlier decision in United States v. Davidson, 936 F.2d 856 (6th Cir.1991), and its analysis of Illinois v. Gates, 462 U.S. 213 (1983).
 
 
 29
 "The standard of review in this case is whether the magistrate had a substantial basis for finding that the affidavit established probable cause to believe that the evidence would be found at the place cited." United States v. Loggins, 777 F.2d 336, 338 (6th Cir.1985) (per curiam). "The courts should not undertake a de novo review of the sufficiency of an affidavit, nor should they 'invalidate [a] warrant by interpreting [an] affidavit in a hypertechnical, rather than a commonsense, manner.' " United States v. Pelham, 801 F.2d 875, 877 (6th Cir.1986) (citation omitted), cert. denied, 479 U.S. 1092, 107 S.Ct. 1305, 94 L.Ed.2d 160 (1987). Rather, the magistrate's probable cause determination should be afforded great deference by the reviewing court. Id. "Probable cause exists when there is a 'fair probability,' given the totality of the circumstances, that contraband or evidence of a crime will be found in a particular place." Loggins, 777 F.2d at 338.
 
 
 30
 Davidson, 936 F.2d at 859.
 
 
 31
 Since we properly give some deference to the magistrate judge making a probable cause determination, I will concur, but were I reviewing the issue de novo, I might have reached a different result.
 
 
 32
 The determination of the district court should be affirmed.
 
 
 
 *
 The Honorable Thomas A. Higgins, United States District Judge for the Middle District of Tennessee, sitting by designation