9 F.3d 110
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES of America, Plaintiff-Appellant,
v.
Manuel CUEVAS (92-2518), Hector Manuel Cuevas (92-2519),
Defendants-Appellees.
 Nos. 92-2518, 92-2519.
 United States Court of Appeals, Sixth Circuit.
 Oct. 28, 1993.
 
 Before: KEITH, GUY, and BATCHELDER, Circuit Judges.
 PER CURIAM.
 
 
 1
 The government appeals the district court's grant of defendants' motions to suppress evidence found in a search of their homes conducted pursuant to a search warrant. The government argues that there was probable cause to support the search warrant or, alternatively, if there was not probable cause the good faith exception to the exclusionary rule, announced in United States v. Leon, 468 U.S. 897 (1984), should be applied.
 
 
 2
 Upon review, we conclude the affidavits for the search warrants that were presented to the magistrate established probable cause.
 
 I.
 
 3
 The Bureau of Alcohol, Tobacco and Firearms, like all federal agencies, relies heavily for information on confidential informants. Sometimes these informants bring information to the agencies on their own, and other times, they actually are given assignments, and often are paid if such assignments result in a successful prosecution. This case involves information provided by a confidential informant (CI).[1] In early May 1992, an ATF agent asked the CI to determine what he could find out about an individual suspected of selling drugs and other contraband. The CI then went to 1095/97 Clark Street, Detroit, Michigan, the address given to him by the agent. The CI noticed that there was a car outside with a "for sale" sign on it, which gave him a legitimate excuse for knocking on the door of the house. The residence at this address is a two-story duplex. The person who answered the door indicated that he wanted $2,000 for the automobile. The CI learned nothing incriminating on that visit. The next day, the CI returned, again knocked on the door, and ostensibly sought to discuss the possible purchase of the car. During the course of this second visit, the CI was able to turn the conversation to the subject of firearms, and the person to whom he was talking, who later was identified as defendant Hector Cuevas, indicated that he had a sawed-off shotgun. He took the CI into the house and showed him the firearm which was hidden under the mattress of his bed. The CI asked if the gun was for sale and Hector Cuevas indicated it was not.
 
 
 4
 At this point, the CI left and telephoned his ATF agent contact.[2] The exact date of this encounter is uncertain, although it was not more than two days prior to May 14.
 
 
 5
 On May 14, the CI and ATF Agent James Petschke met and discussed the CI's information. Petschke prepared an affidavit for a search warrant, took it to a magistrate, and secured a search warrant for the premises located at 1097 Clark, Detroit, Michigan. This affidavit, in pertinent part, read:
 
 
 6
 4. That your affiant was advised by an ATF confidential informant, hereafter referred to as CI-01 that within the last forty-eight (48) hours, he/she was at 1097 Clark, Detroit, Michigan and observed Hector Cuevas with a sawed-off shotgun, unknown make, model or serial number. This confidential source has been used by ATF on approximately twenty (20) prior occasions and on each occasion the information provided by this source was found to be true, creditable and therefore reliable.
 
 
 7
 ....
 
 
 8
 6. That on May 14, 1992, your affiant made an inquiry of the National Firearms Registration and Transfer Record which revealed that Hector Cuevas does not have any firearms registered to him.
 
 
 9
 7. That based on the aforementioned facts stated herein, the affiant has probable cause to believe that the individual identified as Hector Cuevas is in possession of a sawed-off shotgun at his home located at 1097 Clark, Detroit, Michigan and is in violation of Title 26, Chapter 53, Section 5861(d).
 
 
 10
 (App. 42-43.)
 
 
 11
 The next day, the CI again returned to the premises and the door was answered this time by a young girl who said that Hector was probably upstairs with his father, Manuel. The CI knocked on the door leading upstairs and the father, Manuel Cuevas, came to the door. He indicated Hector was not home, and once again, the CI indicated he was interested in obtaining a sawed-off shotgun. Manuel said he would ask around but indicated that he had one of his own. Manuel then went back upstairs, came halfway down the stairs, and showed the CI his sawed-off shotgun. He indicated it was not for sale. The CI then reported this information to the ATF and Agent Petschke went back to the magistrate on May 15, 1992, and presented an affidavit seeking a search warrant for the premises located at 1095 Clark, the residence of Manuel Cuevas. This affidavit tracked the one used the day before, and read in pertinent part:
 
 
 12
 4. That your affiant was advised by an ATF confidential informant, hereafter referred to as CI-01 that within the last forty-eight (48) hours he/she was at 1095 Clark, Detroit, Michigan and observed an individual known as Manuel in possession of a sawed-off shotgun, unknown make, model or serial number. Manuel is further described as an hispanic male, approximately 40 years old, 5'6, 150 lbs. CI-01 also observed Manuel operating a vehicle bearing a Michigan registration plate of BCK501. This confidential source has been used by ATF on approximately twenty (20) prior occasions and on each occasion the information provided by this source was found to be true, creditable and therefore reliable.
 
 
 13
 ....
 
 
 14
 7. That on May 15, 1992, your affiant made an inquiry of the National Firearms Registration and Transfer Record which revealed that Manuel Del-Carmen Cuevas does not have any firearms registered to him.
 
 
 15
 8. That based on the aforementioned facts stated herein, the affiant has probable cause to believe that the individual identified as Manuel Del-Carmen Cuevas is in possession of a sawed-off shotgun at his home located at 1095 Clark, Detroit, Michigan and is in violation of Title 26, Chapter 53, Section 5861(d).
 
 
 16
 (App. 42.)
 
 
 17
 Before presenting the Hector Cuevas affidavit to the magistrate, Agent Petschke did a number of other things. He first contacted a Detroit police officer, who was an acquaintance, and who lived in the precinct where 1097 Clark Street was located. This officer indicated that he knew Hector Cuevas as a result of a traffic stop but that he did not know anything else in particular about him. He did confirm, however, that Hector lived at 1097 Clark Street based on the information given to the police in connection with the traffic stop. The traffic stop had been only a few days before the date that Agent Petschke called.
 
 
 18
 Agent Petschke also made inquiry of the National Firearms Registration and Transfer Records Center and learned that Hector Cuevas did not have any firearms registered to him. This, of course, was significant because the offense in question is not possessing a sawed-off shotgun, but possessing an unregistered firearm which is of a type required to be registered in the National Registry.
 
 
 19
 Agent Petschke also had been given the license plate number of Cuevas' vehicle and he confirmed that a vehicle as described by the CI was registered to Hector Cuevas. He also then was able to secure the driver's license information on Hector Cuevas, from which Agent Petschke was able to determine that the description of Hector Cuevas contained on the Michigan driver's license matched that given to him by the CI.
 
 
 20
 The next day, Agent Petschke followed a similar procedure relative to Manuel Cuevas, although there is no indication from the record that he again checked with his contact in the Detroit Police Department.
 
 
 21
 The warrants were executed simultaneously on May 18, 1992. Inside Hector Cuevas' residence, ATF agents discovered a loaded Mossberg 12-gauge shotgun, cocaine, a measuring scale, and about $2,400 in cash. Inside Manual Cuevas' residence, ATF agents discovered a loaded Mossberg 12-gauge shotgun, a loaded .25 caliber semi-automatic pistol, cocaine, marijuana, and about $2,150 in cash. Both of the shotguns found had pistol grip handles in place of the normal stock. However, both shotguns were approximately one-half inch above the length requirements found in 26 U.S.C. Sec. 5845(a) and therefore did not require registration.
 
 
 22
 Hector and Manuel Cuevas were separately but similarly charged with one count of possessing cocaine with the intent to distribute within 1,000 feet of a school, in violation of 21 U.S.C. Secs. 841(a)(1) and 860, and one count of using and carrying a firearm during and in relation to a drug trafficking crime, in violation of 18 U.S.C. Sec. 924(c)(i). Hector and Manuel Cuevas filed separate motions to suppress the evidence found in the search of their respective homes and for a Franks hearing, pursuant to Franks v. Delaware, 438 U.S. 154 (1978), alleging that statements contained in the affidavits in support of the warrants were deliberately or recklessly false. The district court denied the motions.
 
 
 23
 The court held an in camera interview with the confidential informant and conducted a suppression hearing. The district court concluded that, because nothing was said in either of the affidavits about the barrel or overall length of the shotguns, there was no way to determine that the shotguns in questions could constitute "contraband or evidence of a crime." (App. 45.) The district court also pointed to the fact that the affidavit does not say anything about the confidential informant's ability "to identify a shotgun which has been modified so as to require registration." (App. 46.) Based on these deficiencies in the affidavit, the district court granted the defendants' motions to suppress. The district court found "no discussion of the good faith exception is necessary, United States v. Leon, 468 U.S. 897 (1984), since the agent who signed each of the affidavits obviously should have known of their insufficiencies." (App. 47.)
 
 II.
 
 24
 In this appeal, the government argues that the district court erred in concluding that there was not probable cause to support the warrant. The government contends that the district court gave a hyper-technical reading to the affidavit, contrary to the teachings of Illinois v. Gates, 462 U.S. 213 (1983).
 
 
 25
 [T]his court reviews a district court's decision on a motion to suppress evidence under two complementary standards. First, the district court's findings of fact are upheld unless clearly erroneous. Second, the court's legal conclusion as to the existence of probable cause is reviewed de novo. Where, as in this case, the district court is itself a reviewing court, we owe its conclusions no particular deference.
 
 
 26
 In reviewing a state magistrate's determination of probable cause, this court pays "great deference" to a magistrate's findings, which "should not be set aside unless arbitrarily exercised."
 
 
 27
 United States v. Leake, No. 92-6070, slip op. at 6-7 (6th Cir. July 12, 1993) (citation omitted). A warrant will be upheld so long as the "magistrate had a 'substantial basis for ... conclud[ing]' that a search would uncover evidence of wrongdoing...." United States v. Pelham, 801 F.2d 875, 877-78 (6th Cir.1986), cert. denied, 479 U.S. 1092 (1987). Probable cause exists if "there is a fair probability that contraband or evidence of a crime will be found in a particular place." Gates, 462 U.S. at 238. In passing on the validity of a warrant, "the reviewing court may consider only information brought to the magistrate's attention." Aguilar v. Texas, 378 U.S. 108, 109 n. 1 (1964) (emphasis in original), overruled on other grounds, Illinois v. Gates, 462 U.S. 213 (1983).
 
 
 28
 Under the applicable statute, an unregistered shotgun, even one that is sawed off, is only violative of federal law if it has a barrel less than 18 inches in length or is less than 26 inches overall in length. Defendants argue that nothing in the affidavit indicates that the shotgun is violative of federal law. The term "sawed-off shotgun" is not used anywhere in the statute and is merely a street term for a shotgun which has been altered, usually by shortening the barrel. When used in a warrant, we find the term "sawed-off shotgun" necessarily implies an illegal "sawed-off shotgun." To require the magic word "illegal" or the length in inches would not be consistent with the practical, common sense, nontechnical concept of probable cause adopted in Gates. In reviewing a determination of probable cause, we must keep in mind that "we deal with probabilities. These are not technical; they are the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act." Gates, 462 U.S. at 231 (quoting Brinegar v. United States, 338 U.S. 160, 176 (1949)).
 
 
 29
 The district court overlooked the fact that the defendant was not charged with possessing a sawed-off shotgun. The defendant was charged with possessing a firearm that under law was required to be registered. We believe this to be a significant distinction insofar as how a detached magistrate would view the affidavit presented. Although the affidavit references a sawed-off shotgun, a term that is not used in the statute, the affidavit also indicates that the affiant checked the National Registry and found that neither of the suspects had any firearms registered to him. The only common sense reading that a magistrate, or anyone else for that matter, could place upon the affidavit as a whole, is that the sawed-off shotgun, in the opinion of the affiant, was a weapon and that, because of its dimensions, was required to be registered.
 
 
 30
 The district judge made a factual determination to which we give deference, although it is the one we would have reached ourselves, that this informant was reliable. When a reliable informant, who has worked for the ATF for years, tells an agent that he has seen a sawed-off shotgun and the agent checks the National Registry finding that the owner of the weapon is not registered, we can come to no other conclusion but that the agent legitimately, at that point, went before a magistrate and sought a search warrant.
 
 
 31
 As it turns out, the informant's observations were within a half-inch of being accurate, and given that he told the agent the circumstances under which he saw the firearms, it was reasonable for the agent to conclude that these were illegal weapons. There is no doubt that the conversations between the Cuevases and the informant were discussions carrying the implication that these weapons were contraband. Neither of the Cuevases said to the informant, in response to his inquiries--"you want one of these--just go out to the store and buy one, they're legal." The informant who was experienced in working firearms cases had every reason to believe that these were illegal weapons and his version of the facts, which was not disputed, was sufficient to convince the agent that there was probable cause for a search warrant. The agent put the relevant information in the affidavit and the magistrate properly issued the warrant based upon this information.
 
 
 32
 Even if we were to conclude that probable cause was lacking, we would find that this search is validated under the good faith exception to the exclusionary rule. We disagree with the district judge that, because the affiant provided information for the search warrant, it would be impossible for him to come under the good faith exception. "[S]uppression of evidence obtained pursuant to a warrant should be ordered only on a case-by-case basis and only in those unusual cases in which exclusion will further the purposes of the exclusionary rule." Leon, 468 U.S. at 918 (footnote omitted). When an officer's conduct is objectively reasonable, excluding evidence will not deter future police misconduct. Id. at 920. In reviewing the district court's ruling on this issue, we review its factual findings under the clearly erroneous standard, while the ultimate decision on whether to apply the Leon exception to the exclusionary rule is reviewed de novo. United States v. Duncan, 918 F.2d 647, 650 (6th Cir.1990), cert. denied, 111 S.Ct. 2055 (1991).
 
 
 33
 When a police officer has obtained a search warrant, suppression remains an appropriate remedy in four situations: first, if the issuing judge or magistrate "was misled by information in an affidavit that the affiant knew was false or would have known was false except for his reckless disregard of the truth"; second, if "the issuing magistrate wholly abandoned his judicial role"; third, if the affidavit was " 'so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable' "; or fourth, if the "warrant may be so facially deficient--i.e., in failing to particularize the place to be searched or the things to be seized...." Leon, 468 U.S. at 923 (citations omitted).
 
 
 34
 In denying defendants' motions for Franks hearings, the district court specifically found that Agent Petschke's affidavits did not contain any knowing or reckless falsities, a finding with which we agree. Although defendants allege that the magistrate merely acted as a "rubber stamp" to the affidavits for the search warrants, there is no credible evidence to support that allegation or to support a finding that the magistrate did not objectively evaluate the information before him. See Leake slip op. at 15. Further, we find that the warrants were not facially deficient. Therefore, the only issue remaining, and the one on which the district court relied in refusing to apply the good faith exception to the exclusionary rule, is whether the affidavit was "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable." Leon, 468 U.S. at 923. The only mention the district court made of the good faith exception consisted of one sentence: "Also no discussion of the good faith exception is necessary, United States v. Leon, 468 U.S. 897 (1984), since the agent who signed each of the affidavits obviously should have known of their insufficiencies."[1]
 
 
 35
 A. Well, I believe I told him it had to be under twenty-six inches or the barrel less than eighteen. He told me it was short.
 
 
 36
 THE COURT: That's all he said?
 
 
 37
 A. I believe so.
 
 
 38
 I believe he may have said it was approximately twenty inches. I'm not a hundred percent sure he said that, but he told me it was real short, and he thought it was less than what I advised him [in] inches.
 
 
 39
 (App. 217.) Agent Petschke reasonably could have believed that what he put in the affidavit was enough to support probable cause and his reliance on the warrant was in good faith.
 
 
 40
 Defendants argue that these were "bare bones" affidavits and that therefore reliance on them could not have been in good faith. We find these affidavits were not "bare bones" affidavits. "Bare bones" affidavits are ones that provide no information on why a source is reliable, credible, or how a source knows certain facts; instead, they contain "mere conclusions" or even simply suspicions, beliefs, or conclusions of the informant. See, e.g., Aguilar, 378 U.S. at 109, 114. Defendants' reliance on United States v. Baxter, 889 F.2d 731 (6th Cir.1989), is misplaced as that case involved a material misrepresentation in the affidavit. Id. at 733. In fact, in Baxter this court was concerned because the officer knew the informant was an unknown party who had not provided information in the past and could not demonstrate reliability. In the present case, the informant had provided prior reliable information on numerous occasions. The officer involved here knew not only of this informant's prior proven reliability, but also of the informant's knowledge concerning the illegal nature of shotguns.
 
 
 41
 For the reasons stated above we REVERSE the district court's grant of defendants' motions to suppress.
 
 KEITH, Circuit Judge, dissenting:
 
 42
 Because I disagree with the majority's opinion regarding the sufficiency of the affidavits upon which probable cause was based, I must dissent. Like the district court, I believe that a confidential informant's mere statement that he saw a "sawed-off" shotgun does not provide probable cause for governmental invasion of a citizen's home because sawed-off shotguns are not per se prohibited by law.
 
 
 43
 In this case, the almost identical affidavits used to obtain the warrants authorizing the search of defendants' homes read "your affiant was advised by an ATF confidential informant ... that (defendant was) in possession of a sawed-off shotgun, unknown make, model or serial number." (emphasis added). The affidavits made no reference to the length of the shotguns. Federal law allows sawed-off shotguns longer than 26 inches. The shotguns in this case were not illegal because they were longer than 26 inches and did not require registration. In fact, they were bought over the counter and unmodified.
 
 
 44
 In reviewing the magistrate's decision to issue a warrant for these weapons, this Court must realize that "reviewing courts will not defer to a warrant based on an affidavit that does not 'provide the magistrate with a substantial basis for the existence of probable cause.' 'Sufficient information must be presented to the magistrate to allow that official to determine probable cause; his actions cannot be a mere ratification of the bare conclusions of others ...' " United States v. Leon, 468 U.S. 897, 915 (1984) (citations omitted).
 
 
 45
 "Probable cause exists when there is a 'fair probability,' given the totality of the circumstances, that contraband or evidence of a crime will be found in a particular place." United States v. Davidson, 936 F.2d 856, 859 (6th Cir.1991) citing United States v. Loggins, 777 F.2d 336, 338 (6th Cir.1985).
 
 
 46
 Applying the definition of probable cause to our Circuit's demand that an affidavit set forth facts providing a substantial basis for the existence of probable cause before a search warrant is issued, it is evident that the affidavits in this case lacked probable cause. No facts or circumstances set forth in the affidavits establish a fair probability that contraband or evidence of crime would be found in defendants' homes. Even if sawed-off shotguns were in the homes, the affidavits did not establish a lawful basis for search because they did not suggest that the shotguns constituted the fruits, instrumentalities, or evidence of crime. Neither affidavit mentioned overall length or barrel length. Neither contained information from a government investigation which would suggest the shotguns were illegal.[1] Because the affidavit failed to connect the shotgun with any criminal offense, probable cause was lacking.
 
 
 47
 In his "common sense" reading of the affidavit, the magistrate merely ratified the confidential informant's erroneous conclusion that a sawed-off shotgun is illegal, despite the fact that many sawed-off shotguns are legal. While the majority concedes that many "sawed-off" shotguns are legal, it finds the term "sawed-off shotgun" implies illegality, sufficiently warrants probable cause, and any other reading is "hypertechnical." According to the majority, the requirement that an affidavit refer to contraband or evidence of a crime is inconsistent "with the practical, common sense, nontechnical concept of probable cause...." The majority uses "common sense" to translate easily "a sawed-off shotgun" into "a shotgun under 26 inches."
 
 
 48
 The majority effectively denies Fourth Amendment protection to those who own shotguns which appear sawed-off. For probable cause purposes, a shotgun which appears sawed-off is per se illegal.
 
 
 49
 I disagree. The majority's finding of probable cause, without actual evidence to suggest criminality, appeals only to the most suspicious mind. Paranoia does not authorize magistrates to warp the Constitution by basing governmental intrusions upon affidavits which contain nebulous and negligible, if any, evidence of crime. A warrant must be based upon a clear and comprehensible affidavit, for amorphous slang does not provide a substantial basis to justify the invasion of a citizen's residence. The Fourth Amendment requires that warrants be supported by "Oath or affirmation," not innuendo or implication.
 
 
 50
 Under the good faith exception, when an officer has secured a search warrant, suppression of evidence remains appropriate if the affidavit upon which the warrant is based is "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable." Leon, 468 U.S. at 923. Perhaps because the majority ignores the substantial gaps and defects of the affidavits, it allows the agent to do the same in good faith. I cannot similarly pardon the agent's disregard of the affidavits' insufficiencies. Because the affidavits were so lacking in evidence of crime that belief in probable cause was unreasonable, the good faith exception is inapplicable. Like United States District Judge Avern Cohn, I find the good faith exception inapplicable "since the agent who signed each of the affidavits obviously should have known of their insufficiencies." A police officer should know that the Fourth Amendment requires evidence of crime before the government invades a private home, and as enumerated above, the affidavits in this case failed to describe such evidence.
 
 
 51
 The fact that the magistrate erroneously issued the warrant based on the insufficient affidavit does not indemnify the officer. An agent who obtains a warrant "cannot excuse his own default by pointing to the greater incompetence of the magistrate." Malley v. Briggs, 475 U.S. 335, 346 n. 9 (1986). Agent Petschke produced an affidavit with substantial gaps, and he may not reasonably assume the warrant valid simply because the magistrate condoned the defective affidavits.
 
 
 52
 Our Court should not condone governmental invasions of residences based upon insufficient affidavits. To do so emasculates the Fourth Amendment.
 
 
 
 [1]
 The identity of the informant in this case was revealed when defense counsel inadvertently received a copy of the transcript of the court's in camera interrogation of the informant. Notwithstanding that fact, we will refer to the informant in this case as "CI."
 
 
 [2]
 It is unclear from the record as to whether the initial information from CI to the ATF agent about the sawed-off shotgun was conveyed by telephone or in person. We do not consider the resolution of this issue to have any bearing on the outcome of the case
 
 
 [1]
 Agent Petschke was both the affiant for the warrant and theDP1 The confidential informant testified during the in camera proceedings that he understood that if a shotgun "is more than 26" it's probably not against the law," and that "[i]f its less than 26" it's probably against the law." (App. 273.) In response to the district court's question regarding whether Agent Petschke asked the confidential informant how he knew it was a sawed-off shotgun, Agent Petschke replied:
 
 
 [1]
 The fact that the agent checked with the National Firearms Register and found that shotguns less than 26 inches were not registered with defendants is not incriminating. The defendants cannot be expected to register such shotguns, as they did not possess them