DAUGHTREY, Circuit Judge,
dissenting.
Since 1791, judges, lawyers, prosecutors, and citizens have, for the most part, revered and respected the Fourth Amendment’s recognition of the “right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures,” and its mandate that “no Warrants shall issue, but upon probable cause.” Over the past three or four decades, however, some courts have carved exceptions to the ideals of those provisions, and we, as a nation, have been increasingly content to accept those restrictions on hallowed rights — in exchange for purported security against possible harm from illegal drugs, guns, terrorists, and various imagined threats. Today, the majority chips away yet another chunk from one of our constitutional bulwarks against tyranny. I decline to join in this erosion and therefore dissent.
The cornerstone of the Fourth Amendment’s warrant requirement is establishment of the probable cause necessary to authorize an invasion of a person’s home or possessions. As noted by the majority, we review a district court’s determination of such probable cause de novo and “consider the affidavit upon which the warrant was based in a ‘commonsense’ manner, asking whether, in view of the totality of the circumstances, there was a ‘fair probability’ that contraband would be found.” Citing United States v. Smith, 182 F.3d 473, 476 (6th Cir.1999); United States v. Davidson, 936 F.2d 856, 859 (6th Cir.1991)).
In light of these principles, I would have thought that the majority’s listing of the “strong points” of Agent Hoffman’s affidavit in this matter would have been sufficient to establish the gross inadequacy of that sworn document. Viewed even in the most positive light the majority could shine upon it, the affidavit presented to the magistrate judge to justify entry into a citizen’s home stated only that Chapman, a convicted drug and weapon offender, had been seen with a rifle in his home nine to ten months earlier; that Chapman had been seen with a handgun away from his home one month earlier while distributing narcotics; that Chapman had duct tape in his trash; and that a police dog had alerted to a police department file cabinet drawer where the recovered duct tape was stored.
It is somewhat reassuring that the majority recognizes the inherent problems in relying upon the evidence of prior drug sales and of this police-dog sniff to buttress the warrant request. As noted in the lead opinion, “nothing in the affidavit indicates that a street-level, retail drug trafficker is especially likely to keep his stock in his own residence. That Chapman kept a gun in his house in December does not imply that he kept drugs there the next September.”[1] Majority Opinion at 472-73. Additionally, “the affidavit says only that the file cabinet ‘contained the duct tape packaging’ from Chapman’s *476 trash. Even a well-trained narcotics-detection dog might alert to a file cabinet that, for example, held another suspect’s leavings as well, or had been used for cocaine storage the week before.” Majority Opinion at 473.[2]
Unfortunately, the majority fails to subject the statements offered in Agent Hoffman’s affidavit regarding Chapman’s possession of firearms to the same level of critical examination. Indeed, to allow for the possibility that this information was anything other than stale is to denigrate the very principles upon which the Fourth Amendment is founded. To contend that it is “probable,” not merely “possible,” that the defendant had a firearm in his home in October 2001 simply because one was seen there the previous December is unreasonable. To assert that Chapman’s August possession, in a different location, of a completely different type of firearm, means that the gun would be found in the defendant’s home in October is equally idle speculation.
The majority attempts to support its position by citing to our decision in United States v. Spikes, 158 F.3d 913, 923 (6th Cir.1998), and arguing “that at least one of the items to be sought in the search was ‘of enduring utility’ to the owner.” Majority Opinion at 4-5. This citation, however, merely underscores the fallacy of the majority’s legal conclusion. The “enduring utility” of any firearm to Chapman is suspect given the fact that the confidential informant and the affiant were unable to offer any evidence of any connection between the defendant’s residence and any firearm in the ten months prior to the application for a warrant. Even the one time Chapman was seen with a gun in that interval, the observation was of the defendant, away from his home, with a handgun, not with the rifle that the informant had seen previously. Such drastically differing scenarios show that Chapman, unlike the defendant in Spikes, did not demonstrate an ongoing pattern of criminal activity associated with the location to be searched.
The obvious weaknesses in the affiant’s attempt to establish probable cause to search the defendant’s home necessarily leads the majority to erect Leon’s “good faith” safety net in an effort to preserve the conviction rendered. See United States v. Leon, 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984). In doing so, the majority implicitly recognizes the deficiencies in Agent Hoffman’s efforts to establish probable cause to search the home, but then states — patronizingly, in my judgment — that “the flaws in the warrant affidavit were not so obvious as to be apparent to the average law-enforcement agent.” Majority Opinion at 7. I would attribute greater constitutional sophistication to the women and men to whom we entrust our safety and security. Rather than relegate our expectations of police conduct to the lowest common denominator, I believe that the citizenry should expect law enforcement officials to understand basic constitutional principles forbidding invasions of personal privacy on mere conjecture, stale information, and evidence unrelated to the location to be searched.
A reasonable law enforcement official should have been aware of the glaring shortcomings in the affidavit presented to the magistrate judge in this case. To hold otherwise ratifies a probable cause level so *477 low that no citizen, law-abiding or not, would be protected from fishing expeditions for information contained on his or her person or in his or her home, papers, and effects. Rather than join a decision that erodes fundamental Fourth Amendment values, I dissent from the majority’s analysis and conclusion that the Supreme Court’s holding in Leon allows the introduction into evidence of the fruits of this illegal search.

. Although Agent Hoffman spoke with his confidential informant on September 25, 2001, Hoffman did not seek or execute the search warrant until October.

. Presumably, the majority also would grant little, if any, weight to the fact that duct tape was found in Chapman’s trash, even though duct tape is sometimes used to wrap narcotics. After all, duct tape is an innocent and extremely common item; the Department of Homeland Security has even advised that we all purchase duct tape and sheets of plastic to protect ourselves from our nation’s enemies.